**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* XAVIER BECERRA, Attorney General, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF HAWAII, PEOPLE OF THE STATE OF ILLINOIS, STATE OF IOWA, STATE OF MARYLAND, STATE OF MINNESOTA, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA *ex rel.* JOSH STEIN, Attorney General, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, *ex rel.* MARK R. HERRING, Attorney General, and STATE OF WASHINGTON, <br><br>                          Plaintiffs, <br>v. <br><br>UNITED STATES DEPARTMENT OF EDUCATION, and BETSY DEVOS, *in her official capacity as Secretary of Education,* <br><br>                       Defendants. | Civil Action No. 17-1331 (RDM) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

I.   INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF FACTS........................................................................................ 3

    A. Federal Student Loans............................................................................................ 3

    B. Borrower Defense Rule.......................................................................................... 3

    C. The Department's Delay Rule and the CAPPS Litigation ............................................ 6

III. LEGAL STANDARD ............................................................................................... 9

IV.  ARGUMENT............................................................................................................. 10

    A. **The Department Violated the APA by Undertaking Substantive Rulemaking
       Without Observing Procedures Required by Law** ........................................... 11

       1.   The Department's Delay of the Borrower Defense Rule Constitutes
           Substantive Rulemaking ........................................................................... 12

       2.   The Delay Rule Violates the APA Because the Department Did Not Provide
           for Notice and Comment or Negotiated Rulemaking .................................. 15

    B. **The Delay Rule Improperly Invokes and Fails to Comply with the
       Requirements of 5 U.S.C. § 705** ...................................................................... 17

       1.   The Delay Rule Inappropriately Invokes Section 705 to Facilitate a
           Regulatory Reset and Fails to Justify the Delay of the Borrower Defense Rule
           on the Basis of the Pending Litigation........................................................ 18

       2.   The Delay Rule Failed to Apply the Requisite Legal Standard for a Stay
           Under 5 U.S.C. § 705 ............................................................................... 21

    C. **The Delay Rule Violates the APA Because the Department Did Not Provide an
       Adequate Explanation for Its Stay of the Borrower Defense Rule Including a
       Reasoned Analysis for Its Reversal of Position Regarding the Rule**........................ 27

    D. **The Department's Improper Invocation of 5 U.S.C. § 705 and Its Failure to
       Provide an Adequate Justification for Its Delay of the Borrower Defense Rule
       Necessitate Vacatur of the Delay Rule** ............................................................ 32

V.   CONCLUSION ........................................................................................................ 32

i

**Table of Authorities**

**Cases**

*Affinity Healthcare Services, Inc. v. Sebelius,*
  720 F. Supp. 2d 12 (D.D.C. 2010).................................................................... 21, 23

*Bill Barrett Corp. v. U.S. Dept. of Interior,*
  601 F. Supp. 12d 331 (D.D.C. 2009)...................................................................... 23

*Burlington Truck Lines v. United States,*
  371 U.S. 156 (1962)........................................................................................... 28, 29

*Chaplaincy of Full Gospel Churches v. England,*
  454 F. 3d 290 (D.C. Cir. 2006)............................................................................... 23

*Clean Air Council v. Pruitt,*
  862 F.3d 1 (D.C. Cir. 2017)................................................................................ 12, 16

*Council of S. Mountains, Inc. v. Donovan,*
  653 F.2d 573 (D.C. Cir. 1981)................................................................................ 13

*Cuomo v. U.S. Nuclear Regulatory Comm'n,*
  772 F.2d 972 (D.C. Cir. 1985)................................................................................ 22

*Encino Motorcars, LLC v. Navaro,*
  136 S. Ct. 2117 (2016).......................................................................................... 28

*Envtl. Def. Fund v. E.P.A.,*
  716 F.2d 915 (D.C. Cir. 1983)................................................................................ 12

*Envtl. Def. Fund, Inc. v. Gorsuch,*
  713 F.2d 802 (D.C. Cir. 1983)..................................................................... 15, 16, 17

*Judulang v. Holder,*
  565 U.S. 42 (2011)................................................................................................ 22

*Manin v. NTSB,*
  627 F.3d 1239 (D.C. Cir. 2011).............................................................................. 32

*Mexichem Specialty Resins, Inc. v. E.P.A.,*
  787 F.3d 544 (D.C. Cir. 2015)................................................................................ 23

*Michigan v. E.P.A.,*
  135 S. Ct. 2699 (2015).......................................................................................... 30

*Mizerak v. Adams*,
    682 F.2d 374 (2d Cir. 1982) ............................................................................. 31

*Morgan Stanley Capital Group, Inc. v. Public Util. Dist. No. 1 of Snohomish Cnty.*,
    554 U.S. 527 (2008).................................................................................... 10, 32

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)........................................................................................ passim

*Nat. Res. Def. Council v. Abraham*,
    355 F.3d 179 (2d Cir. 2004) ............................................................................. 16

*Nat. Res. Def. Council v. E.P.A.*,
    683 F.2d 752 (3d Cir. 1982) ................................................................. 12, 13, 15

*Public Citizen v. Steed*,
    733 F.2d 93 (D.C. Cir. 1984)............................................................................. 15

*Resolute Forest Prod., Inc. v. U.S. Dep't of Agric.*,
    187 F. Supp. 3d 100 (D.D.C. 2016)................................................................... 31

*Sierra Club v. Jackson*,
    833 F. Supp. 2d 11 (D.D.C. 2012) ............................................................... passim

*State of N. J., Dept. of Envtl. Prot. v. E.P.A.*,
    626 F.2d 1038 (D.C. Cir. 1980)......................................................................... 17

*Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm.*,
    259 F.2d 921 (D.C. Cir. 1958)........................................................................... 22

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)............................................................................................... 23

## Statutes

20 U.S.C. § 1071 *et seq.*........................................................................................... 3

20 U.S.C. § 1087e(h) ................................................................................................. 3

20 U.S.C. § 1089(c) ................................................................................................. 19

20 U.S.C. § 1098a..................................................................................................... 2

20 U.S.C. § 1098a(a)................................................................................................. 4

20 U.S.C. § 1098a(b) ..................................................................................... 4, 15, 16

5 U.S.C. § 551 ................................................................................................................ 12

5 U.S.C. § 553 ........................................................................................................... passim

5 U.S.C. § 705 ................................................................................................. 2, 8, 17, 18

5 U.S.C. § 706(2) ...................................................................................................... passim

## Rules and Regulations

34 C.F.R. §  685.222 ........................................................................................................ 6

34 C.F.R. § 668.14 ........................................................................................................... 8

34 C.F.R. § 668.171 ........................................................................................ 6, 8, 20, 26

34 C.F.R. § 668.175 ......................................................................................................... 8

34 C.F.R. § 668.41 ..................................................................................................... 8, 20

34 C.F.R. § 668.71 ........................................................................................................... 8

34 C.F.R. § 668.90 ........................................................................................................... 8

34 C.F.R. § 668.93 ........................................................................................................... 8

34 C.F.R. § 674.33 ..................................................................................................... 8, 20

34 C.F.R. § 682.202 ......................................................................................................... 8

34 C.F.R. § 682.211 ......................................................................................................... 8

34 C.F.R. § 682.402 ..................................................................................................... 8, 20

34 C.F.R. § 682.405 ......................................................................................................... 8

34 C.F.R. § 682.410 ......................................................................................................... 8

34 C.F.R. § 685.200 ......................................................................................................... 8

34 C.F.R. § 685.205 ......................................................................................................... 8

34 C.F.R. § 685.206 ..................................................................................................... 6, 8, 20

34 C.F.R. § 685.212 ......................................................................................................... 8

34 C.F.R. § 685.214 ..................................................................................................... 8, 20

34 C.F.R. § 685.215 ....................................................................................................... 8

34 C.F.R. § 685.222 ............................................................................................... 6, 8, 20

34 C.F.R. § 685.223 ..................................................................................................... 20

34 C.F.R. § 685.300 .................................................................................................. 8, 20

34 C.F.R. § 685.308 ....................................................................................................... 8

34 C.F.R. § 685.310 ..................................................................................................... 20

34 C.F.R. Part 668, Subpart L, Appendix C ................................................................. 8

34 C.F.R. Part 685, Subpart B, Appendix A ................................................................. 8

80 Fed. Reg. 50,588 (Aug. 20, 2015) ........................................................................... 4

81 Fed. Reg. 39,330 (June 16, 2016) ........................................................................ 4, 5

81 Fed. Reg. 75,926 (Nov. 1, 2016) .................................................................... passim

82 Fed. Reg. 27,621 (June 16, 2017) ................................................................... passim

D.D.C. Local Civ. R. 7(h) ............................................................................................ 3

D.D.C. Local Civ. R. 7(l) ........................................................................................... 10

Fed. R. Civ. P. 56(b) ..................................................................................................... 9

Fed. R. Civ. P. 56(c) ..................................................................................................... 9

**Other Authorities**

Administrative Procedure Act, Report of the Committee on the Judiciary on S. 7, Senate Report No. 752, reprinted in Administrative Procedure Act, Legislative History, 79th Congress, 1944-46, Sen. Doc. No. 248 ........................................................................... 21, 23

*CAPPS v. DeVos*, No-17-999, Compl., ECF No. 1 (D.D.C. filed May 24, 2017) ..................... 7, 8

*CAPPS v. DeVos*, No-17-999, Motion for a Preliminary Injunction, ECF. No. 6, 6-1 (D.D.C. filed June 2, 2017) ......................................................................................... 7, 20

*CAPPS v. DeVos*, No-17-999, Notice of Withdrawal of Motion, ECF No. 21 (D.D.C. filed June 14, 2017) ..................................................................................................................... 9

Fees Applicable to Natural Gas Pipelines: Texas Gas Transmission Corp., 51 Fed. Reg. 43599
(Federal Energy Regulatory Commission ("FERC") December 3, 1986) ........................... 22

In the Matter of Pub. Serv. Co. of New Hampshire, Et Al. (Seabrook Station, Units 1 & 2), 1
E.A.D. 389 (E.P.A. Aug. 12, 1977) .................................................................................... 22

Letter from Acting Under Secretary James F. Manning to Senator Richard J. Durbin (July 7,
2017), available at https://www.durbin.senate.gov/imo/media/doc/17-
010570%20Durbin%20Outgoing.pdf ....................................................................... 9, 25, 31

Matter of California Dental Ass'n. Docket No. 9259, 1996 FTC LEXIS 277, (Federal Trade
Comm'n May 22, 1996) ...................................................................................................... 22

Matter of Robert D. Rapaport, OTS Order No. AP 94-08 (Office of Thrift Supervision February
18, 1994) ............................................................................................................................ 22

Press Release, Department of Education, Secretary DeVos Announces Regulatory Reset to
Protect Students, Taxpayers, Higher Ed Institutions, (June 14, 2017) *available at*
https://www.ed.gov/news/press-releases/secretary-devos-announces-regulatory-reset-
protect-students-taxpayers-higher-ed-institutions ....................................................... 1, 7, 14

Special Counsel v. Starrett, 28 M.S.P.R. 425 (Merit Systems Protections Bd. July 24, 1985) .... 22

Stacy Cowley, *18 States Sue Betsy DeVos Over Student Loan Protections*, N.Y. Times (July 6,
2017), *available at* https://www.nytimes.com/2017 /07/06/business/dealbook/massachusetts-
betsy-devos-lawsuit.html?mcubz=1 ................................................................................... 14

## I.  INTRODUCTION

This action challenges the unlawful stay by the Department of Education (the "Department") on June 16, 2017, of a duly promulgated rule known as the "Borrower Defense Rule" (the "Rule") by means of a two-page final rule, which failed to comply with the requirements of the Administrative Procedure Act ("APA"). Department of Education, Final Rule, Notification of Partial Delay of Effective Dates, 82 Fed. Reg. 27,621 (June 16, 2017) (hereinafter "Delay Rule"), attached as Ex.1 to Decl. of Gabrielle Crossnoe. The Borrower Defense Rule was issued following a robust negotiated rulemaking process and was designed to protect student loan borrowers "from misleading, deceitful, and predatory practices" of postsecondary schools and to hold schools accountable for such misconduct. Final Regulations, 81 Fed. Reg. 75,926 (Nov. 1, 2016) ("Borrower Defense Rule" or the "Rule"), attached as Ex. 2 to Decl. of Gabrielle Crossnoe.

Little more than two weeks before the Borrower Defense Rule's effective date, the Department issued its cursory Delay Rule in conjunction with the announcement of a new negotiated rulemaking intended to replace the Borrower Defense Rule. The Delay Rule and the Department's official statements regarding its issuance make clear that the Delay Rule is part and parcel of the Department's efforts not merely to delay, but to replace the Borrower Defense Rule through a "regulatory reset." Press Release, Department of Education, Secretary DeVos Announces Regulatory Reset to Protect Students, Taxpayers, Higher Ed Institutions, (June 14, 2017) ("June 14, 2017 Press Release") *available at* https://www.ed.gov/news/press-releases/secretary-devos-announces-regulatory-reset-protect-students-taxpayers-higher-ed-institutions, attached as Ex. 3 to Decl. of Gabrielle Crossnoe.

By staying the implementation of major portions of the Rule, the Department effectively canceled a duly promulgated regulation without soliciting, receiving, or responding to any comment from any stakeholder or member of the public. This delay harms state residents and the States themselves by relieving schools of their obligations under the Borrower Defense Rule and denying student borrowers access to the critical protections established by the Rule.

In the Delay Rule, the Department summarily invokes 5 U.S.C. § 705 and states that pending litigation challenging portions of the Borrower Defense Rule necessitates postponement of the Rule's effective date. While § 705 permits agencies—in limited circumstances—to temporarily stay regulations pending judicial review, it does not permit an agency to stay a duly promulgated regulation in order to facilitate the regulation's replacement. Here, the Department improperly invoked § 705 to facilitate the Department's replacement of the Borrower Defense Rule and failed to adequately tie the stay to the pending litigation. In addition, the Department failed to employ the four-part standard applicable to stays under § 705, requiring an agency to set forth and consider: (1) the likelihood of success on the merits, (2) the likelihood that the party that would benefit from a stay would be irreparably harmed absent relief, (3) whether other members of the public would be harmed by the stay, and (4) the public interest in granting the stay. *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012).

As set forth below, the Department's Delay Rule violates the APA in several respects. First, the Department's failure to comply with procedures required by law—namely the notice and comment requirements of the APA, 5 U.S.C. § 553, and the negotiated rulemaking requirements of the Higher Education Act ("HEA"), 20 U.S.C. § 1098a—violates the APA, 5 U.S.C. § 706(2)(D). Second, the Department's improper invocation of 5 U.S.C. § 705 and its failure to satisfy the requirements applicable to an agency stay under § 705, including applying

the requisite four-part test and providing a justification for the delay based on pending litigation, renders the Delay Rule arbitrary, capricious, otherwise contrary to the law, and in excess of the Department's statutory authority. 5 U.S.C. § 706(2)(A), (C). Third, the Delay Rule failed to comply with the APA's requirement that an agency provide a satisfactory explanation for agency action, including a reasoned analysis explaining its reversal of a previous position or rule. This failure renders the Delay Rule arbitrary, capricious, and otherwise contrary to the law. 5 U.S.C. § 706(2)(A). Accordingly, Plaintiffs request that this Court grant their motion for summary judgment and vacate the Delay Rule.

## II.  STATEMENT OF FACTS[1]

### A.  Federal Student Loans

Title IV of the HEA, 20 U.S.C. § 1071 *et seq.* ("Title IV"), authorizes the federal student financial aid program. Under Title IV, the Department administers multiple federal student loan programs, including the Federal Family Education Loan Program ("FFEL program") and the William D. Ford Direct Student Loan Program ("Direct Loan program").

Section 455(h) of the HEA authorizes the Secretary of Education to create regulations designating which acts or omissions of a postsecondary institution a borrower may raise as a defense to repayment of a Direct Loan. 20 U.S.C. § 1087e(h).

### B.  Borrower Defense Rule

In August 2015, in the wake of state and federal investigations into for-profit schools that uncovered pervasive misconduct, the Department announced a negotiated rulemaking to update

---

[1] The present case involves judicial review of agency action and is therefore governed by D.D.C. Local Civil Rule 7(h)(2). Accordingly, this memorandum provides a statement of facts citing to the administrative record in its present form, and the Plaintiffs have not submitted a separate statement of material facts as to which there is no dispute pursuant to D.D.C. Local Civil Rule 7(h)(1).

its Title IV regulations concerning the "acts or omissions of an institution of higher education" that could provide grounds for borrowers to seek the discharge of their federal loans ("borrower defenses"). Notice of Intent to Establish Negotiated Rulemaking Committee, 80 Fed. Reg. 50,588, 50,588 (Aug. 20, 2015), attached as Ex. 4 to Decl. of Gabrielle Crossnoe. The rulemaking was also intended to address "the consequences of such borrower defenses for borrowers, institutions, and the Secretary." *Id.*

Under the HEA, the Department must provide public notice and comment, as well as engage in a negotiated rulemaking process when issuing rules related to the federal student loan programs. 20 U.S.C. § 1098a(a)(1) (requiring the Department to "obtain public involvement in the development of proposed regulations" under Title IV and to "obtain the advice of and recommendations from individuals and representatives of the groups involved in student financial assistance programs."). These regulations require the Department to submit draft regulations to a negotiated rulemaking process involving participants representing a wide range of groups "involved in student financial assistance programs." 20 U.S.C. § 1098a(a)(1), (b)(1). If the negotiators reach consensus on a proposed rule, the Department must publish the proposed rule in the Federal Register for public comment. If no consensus is reached, the Department may draft a proposed rule and publish such proposed rule in the Federal Register for public comment.

Consistent with the HEA, the Department held hearings in Washington, D.C. and San Francisco to solicit public feedback about the specific topics to be considered in its rulemaking regarding borrower defenses. Notice of Proposed Rulemaking, 81 Fed. Reg. 39,330, 39,333 (June 16, 2016), attached as Ex. 5 to Decl. of Gabrielle Crossnoe. The Department then established a negotiated rulemaking committee comprised of individuals representing students/borrowers, private/nonprofit institutions, two-year public institutions, four-year public

institutions, private/for-profit institutions, minority-serving institutions, FFEL Program lenders and loan servicers, FFEL Program guaranty agencies and guaranty agency servicers, state attorneys general, state higher education executive officers, financial aid administrators, accreditors, legal assistance organizations, consumer advocacy organizations, and U.S. military service members and veterans. *Id*. at 39,333-34. The rulemaking committee met three times to draft regulations, but did not reach consensus on a rule. Lacking consensus, the Department instead disseminated a proposed rule, published a notice of proposed rulemaking in the federal register on June 16, 2016, and solicited public comments to be submitted by August 1, 2016. *Id*. at 39,330. The Department ultimately received comments from more than 50,000 parties on its proposed rule. 81 Fed. Reg. at 75,928.

On November 1, 2016, the Department published the final Borrower Defense Rule in the Federal Register. 81 Fed. Reg. 75,926 (Nov. 1, 2016). The Rule was designed to "protect student loan borrowers from misleading, deceitful, and predatory practices of, and failures to fulfill contractual promises by, institutions participating in the Department's student aid programs." *Id*. at 75,926. The Rule was also intended to "protect taxpayers by requiring that financially risky institutions are prepared to take responsibility for losses to the government for discharges of and repayments for Federal Student loans." *Id*. To achieve its goals, the Rule established a number of important protections including, *inter alia*:

- providing students with "access to consistent, clear, fair, and transparent processes to seek debt relief," *Id*. at 75,926;

- creating a process for group discharges that does not require individual applications where a school has engaged in widespread misconduct, *Id*. at 76,065;

- requiring that financially risky institutions take responsibility for unlawful conduct that results in discharge of borrowers' loans, *Id*. at 75,926;

- requiring institutions with poor loan repayment outcomes to provide warnings about their loan repayment rates in order to help students "make more informed decisions" concerning their educational choices, *Id.* at 75,927; and

- prohibiting schools participating in the Direct Loan Program from including in student enrollment agreements mandatory arbitration agreements or class action waivers to resolve claims with students, *Id.* at 75,926-27.

Under the Rule, a successful enforcement action brought by a state attorney general against a postsecondary institution gives rise to a borrower defense to loan repayment and entitles the Department to seek repayment from the school of amounts forgiven. *See* 81 Fed. Reg. at 76,083; 34 C.F.R. § 685.222(b). Additionally, a state agency's issuance of a civil investigative demand to a school qualifies as notice permitting the Secretary of Education to seek repayment from the school for any amounts subsequently forgiven in the borrower defense discharge process. *See* 81 Fed. Reg. at 76,081, 84-85; 34 C.F.R. §§ 685.206(c)(4)(iii), 685.222(e)(7)(iii)(C), and 685.222(h)(5)(iii)(C).

A lawsuit brought against a school by a state agency for borrower defense-related claims will also negatively impact a school's eligibility to participate in federal student loan programs. See 81 Fed. Reg. at 76,073; 34 C.F.R. § 668.171(c). The Department calculates a school's "financial responsibility" to determine whether a school is sufficiently financially responsible to participate in the Department's Title IV programs. A state agency's lawsuit can result in a low score, imperiling a school's access to Title IV funding. *Id.*

The Rule was intended to go into effect on July 1, 2017. 81 Fed. Reg. at 75,926.

### C. The Department's Delay Rule and the CAPPS Litigation

On May 24, 2017, the California Association of Private Postsecondary Schools ("CAPPS"), a trade organization comprised largely of for-profit schools, filed a lawsuit challenging some, but not all, of the provisions of the Borrower Defense Rule ("the CAPPS

action"). In particular, the CAPPS action challenges: (1) provisions prohibiting mandatory arbitration clauses and class action waivers in contracts between students and schools participating in the Direct Loan program; (2) provisions altering the circumstances and processes by which students may raise a defense to repayment of Title IV loans; (3) provisions imposing new financial responsibility requirements on schools and mandating public disclosures when schools do not meet these requirements; and (4) provisions that require schools whose graduates have low loan repayment rates to make public disclosures. *See CAPPS v. DeVos*, No-17-999, Compl. ¶¶ 202-241, ECF No. 1 (D.D.C. filed May 24, 2017).

On June 2, 2017, CAPPS filed a motion for a preliminary injunction seeking to enjoin only those provisions of the Rule that prohibit schools participating in the Direct Loan program from using mandatory arbitration agreements and class action waivers to deny students the right to seek relief in court. *CAPPS v. DeVos*, No-17-999, Motion for a Preliminary Injunction, ECF. No. 6, 6-1 (D.D.C. filed June 2, 2017). CAPPS did not ask the court to enjoin any other provisions of the Rule pending litigation.

Less than two weeks later, on June 14, 2017, the Department issued an official statement in which it simultaneously announced its intentions to delay the effective date of the Borrower Defense Rule and to initiate a new negotiated rulemaking to replace the Rule. The Department referred to this effort as a "regulatory reset." June 14, 2017 Press Release.

Two days later, the Department published a two-page rule—the Delay Rule—in the Federal Register, staying the effective date of numerous provisions included in the Borrower Defense Rule. 82 Fed. Reg. 27,621 (June 16, 2017). The Department did not provide an opportunity for notice and comment prior to issuing the Delay Rule.

As authority for delaying the Rule, the Department invoked 5 U.S.C. § 705, which provides that "[w]hen an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review." The Department stated that it had "concluded that justice require[d] it to postpone the effectiveness of certain provisions of the final regulations until the judicial challenges to the final regulations are resolved." 82 Fed. Reg. at 27,621. Despite referring to the CAPPS action, the Delay Rule stays multiple provisions of the Rule that are not expressly challenged in the CAPPS action, together with provisions that CAPPS challenged but did not seek to enjoin pending litigation.[2]

The Delay Rule makes only cursory references to the substance of the CAPPS action. It states without analysis or discussion that the CAPPS action "raised serious questions concerning the validity of certain provisions of the final regulations." 82 Fed. Reg. at 27,621. It states that the CAPPS action "identified substantial injuries that could result if the final regulations go into effect before those questions are resolved." *Id.* However, the Delay Rule describes the two purported injuries it identifies—the cost of modifying contracts in accordance with the arbitration and class action regulations and the costs associated with the financial responsibility trigger provisions—in conjectural terms. The Delay Rule does not conclude or show that these costs are likely, or that they will cause irreparable injury if they are incurred.

---

[2] The Delay Rule purports to delay revisions to or additions of 34 C.F.R. §§ 668.14(b)(30)−(32); 668.41(h)−(i); 668.71(c); 668.90(a)(3); 668.93(h)−(j); 668.171; 668.175(c), (d), (f), and (h); Part 668, Subpart L, Appendix C; 674.33(g)(3) and (g)(8); 682.202(b)(1); 682.211(i)(7); 682.402(d)(3), (d)(6)(ii)(B)(1) and (2), (d)(6)(ii)(F) introductory text, (d)(6)(ii)(F)(5), (d)(6)(ii)(G), (d)(6)(ii)(H)−(K), (d)(7)(ii) and iii), (d)(8), and (e)(6)(iii); 682.405(b)(4)(ii); 682.410(b)(4) and (b)(6)(viii); 685.200(f)(3)(v) and (f)(4)(iii); 685.205(b)(6); 685.206(c); 685.212(k); 685.214(c)(2), (f)(4)−(7); 685.215(a)(1), (c)(1)−(c)(8), and (d); 685.222; Part 685, Subpart B, Appendix A; 685.300(b)(11), (b)(12), and (d)−(i); and 685.308(a). *See* 82 Fed. Reg. 27,621 (June 16, 2017). *Compare with CAPPS Compl.* ¶¶ 66−98 (expressly challenging 34 C.F.R. §§ 668.41(h) and (i); 668.171; 685.206(c); 685.222; and 685.300(e) and (f).

The Delay Rule addresses the effect of its delay on borrowers in one sentence in which the Department claims that borrowers will not be harmed by the delay because "the Department will continue to process borrower defense claims under existing regulations that will remain in effect during the postponement." 82 Fed. Reg. at 27,621. However, the Department's records indicate that as of July 7, 2017, the Department had processed *none* of the more than 65,000 pending borrower defense claims. Letter from Acting Under Secretary James F. Manning to Senator Richard J. Durbin (July 7, 2017) ("July 7, 2017 Letter to Senators") *available at* https://www.durbin.senate.gov/imo/media/ doc/17-010570%20Durbin%20Outgoing.pdf, attached as Ex. 6 to Decl. of Gabrielle Crossnoe.

The Delay Rule expressly states that the stay is intended to allow the Department to replace the Borrower Defense Rule: "The postponement will allow the Department to consider and conduct a rulemaking process to review and revise the final regulations and ensures regulated parties will not incur costs that could be eliminated under any future regulations the Department promulgates on these matters." 82 Fed. Reg. at 27,622.

After the Department issued the Delay Rule, CAPPS withdrew its motion for a preliminary injunction. *CAPPS v. DeVos*, No-17-999, Notice of Withdrawal of Motion, ECF No. 21 (D.D.C. filed June 14, 2017).

### III.  LEGAL STANDARD

A movant is entitled to summary judgment when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under the Federal Rules of Civil Procedure, a party may move for summary judgment "at any time until 30 days after the close of discovery." Fed. R. Civ. P. 56(b). The D.D.C. Local Civil Rules require only that a dispositive motion in a

civil action "be filed sufficiently in advance of the pretrial conference that it may be fully briefed and ruled on before the conference." D.D.C. Local Civ. R. 7(l).

Under the APA, a reviewing court must set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.§ 706(2)(A). The reviewing court must also hold unlawful and set aside an agency action undertaken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(C), (D). An agency action may only be upheld "on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). The reviewing court will not uphold a challenged rule where the justification offered by the agency in court differs from the justification provided in the challenged rule. *Morgan Stanley Capital Group, Inc. v. Public Util. Dist. No. 1 of Snohomish Cnty.*, 554 U.S. 527, 544 (2008).

## IV.  ARGUMENT

For the reasons set forth below, the Department's stay of the Borrower Defense Rule is arbitrary, capricious, not in accordance with law, in excess of statutory authority, and was undertaken without observance of procedures required by law. First, the Department violated the procedural requirements of the APA and the HEA. The APA requires agencies engaging in substantive rulemaking to provide the public with notice and an opportunity to comment during the rulemaking process, and the HEA requires the Department to undertake a negotiated rulemaking process before issuing rules related to Title IV programs. These requirements apply to the Department's Delay Rule, which is a substantive rule that affects the rights and obligations of borrowers and schools, and operates as a rescission of the Borrower Defense Rule, effectuating the Department's "regulatory reset." Nonetheless, the Department issued its cursory

Delay Rule without undertaking negotiated rulemaking or providing an opportunity for notice and comment, in violation of the APA. 5 U.S.C. § 706(2)(D).

Second, despite purporting to rely on 5 U.S.C. § 705 as a basis for its delay of the Rule, the Department failed to satisfy the requirements applicable to an agency stay under § 705. An agency issuing a stay under § 705 must justify the stay on the basis of pending litigation and must apply the four-part preliminary injunction test applicable to judicial stays. The Delay Rule invokes § 705 but fails to provide sufficient justification based on the pending litigation and fails to apply—or even mention—the legal standards applicable to an agency stay under § 705, in violation of the APA. 5 U.S.C. § 706(2)(A), (C).

Third, the Department's cursory Delay Rule fails to provide any satisfactory explanation for delaying the Borrower Defense Rule. It does not contain a reasoned analysis justifying the Department's change of course regarding the Rule. An agency must "examine the relevant data and articulate a satisfactory explanation" for its action. *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Where an agency is reversing course and rescinding a rule, the explanation provided by the agency must include a reasoned analysis for its change of position. *Id.* The Department's failure to articulate a satisfactory explanation and to provide a reasoned analysis for its reversal of position regarding the Borrower Defense Rule violates the APA. 5 U.S.C. § 706(2)(A).

The Department's failure to satisfy the requirements of the APA renders the Delay Rule unlawful. The Delay Rule therefore must be set aside.

## A. The Department Violated the APA by Undertaking Substantive Rulemaking Without Observing Procedures Required by Law

To ensure that both the general public and potentially affected parties have the opportunity to participate, observe, and understand federal agency action and policymaking, the

APA requires federal agencies engaging in substantive rulemaking to provide the public with
notice of a proposed rulemaking and an opportunity to comment during the rulemaking process.
5 U.S.C. § 553. The Department failed to adhere to these required procedures prior to adopting
the Delay Rule, which is a substantive rule subject to the APA's notice and comment
requirements. The Department's failure to observe procedures required by law contravenes the
APA, 5 U.S.C. § 706(2)(D), and the Delay Rule should therefore be vacated.

### 1. The Department's Delay of the Borrower Defense Rule Constitutes Substantive Rulemaking

The Delay Rule is a substantive rule for the purposes of the APA. The APA defines
"rule" as "the whole or a part of an agency statement of general or particular applicability and
future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4). It further
defines rulemaking as the "agency process for formulating, amending, or repealing a rule." *Id.*
§ 551(5). The Delay Rule is an agency statement of general applicability that, by design, alters
the rights and obligations of regulated parties and students, and operates as a repeal of the
Borrower Defense Rule.

As a general matter, delayed implementation of a final rule constitutes substantive
rulemaking. *See Clean Air Council v. Pruitt,* 862 F.3d 1, 9 (D.C. Cir. 2017) (finding that an
agency has no "inherent authority" to delay a duly-promulgated regulation without following
required procedures); *Envtl. Def. Fund v. E.P.A.*, 716 F.2d 915, 920 (D.C. Cir. 1983) ("The
suspension or delayed implementation of a final regulation normally constitutes substantive
rulemaking under APA."); *Nat. Res. Def. Council v. E.P.A.*, 683 F.2d 752, 761 (3d Cir. 1982)
("EPA's action in indefinitely postponing the effective date of the amendments fit the definition
of 'rule' in the APA, and, as such, was subject to the APA's rulemaking requirements.");
*Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 n. 28 (D.C. Cir. 1981) ("[T]he

December 5 order was a substantive rule since, by deferring the requirement that coal operators supply life-saving equipment to miners, it had 'palpable effects' upon the regulated industry and the public in general."). Notably, the effective date "is an essential part of any rule: without an effective date, the 'agency statement' could have no 'future effect,' and could not serve to 'implement, interpret, or prescribe law or policy.' In short, without an effective date a rule would be a nullity because it would never require adherence." *Nat. Res. Def. Council*, 683 F.3d at 762. As the Court explained in *National Resource Defense Council, Inc. v. E.P.A.*, excluding material alterations to a rule's effective date from the APA's rulemaking provisions would result in the untenable scenario wherein "[an] agency could (albeit indirectly) repeal a rule simply by eliminating (or indefinitely postponing) its effective date, thereby accomplishing without rulemaking something for which the [APA] requires a rulemaking proceeding." *Id.*

In this case, the Delay Rule's material alteration of the effective date of the Rule has palpable effects on the regulated industry and the parties involved. The stay denies borrowers the protections established by the Borrower Defense Rule and is explicitly intended to relieve regulated parties of their obligations under the Rule. The Delay Rule explains that the stay "ensures regulated parties will not incur costs that could be eliminated under any future regulations the Department promulgates on these matters." 82 Fed. Reg. at 27,622. This language makes clear that the Delay Rule is intended to prevent the regulated parties from *ever* incurring the costs associated with the Borrower Defense Rule.

In addition to affecting the rights of borrowers and schools, the Department's stay has the substantive goal and effect of rescinding the Borrower Defense Rule and facilitating the Department's replacement of the Rule. The Delay Rule expressly justifies the stay of implementation as aiding the Department's efforts to "review and revise" the Rule:

13

> [T]he Department is announcing its plan to review and revise the regulations
> through the negotiated rulemaking process required under section 492 of the HEA.
> The postponement will allow the Department to consider and conduct a rulemaking
> process to review and revise the final regulations . . . .

82 Fed. Reg. at 27,622. Similarly, in its June 14, 2017 Press Release, the Department announced

the delay as part of its "regulatory reset." June 14, 2017 Press Release. In describing the options

that will be available to borrowers pending the new rulemaking, the Department's June 14, 2017

Press Release suggests that the Department intends to bypass the Borrower Defense Rule *entirely*

by transitioning straight from the regulation that has been in place since the 1990s to the

regulations that will result from the future negotiated rulemaking referenced in the Delay Rule:

"While negotiated rulemaking occurs, the Department will continue to process applications

*under the current borrower defense rules*." *Id.* (emphasis added). The text of the Delay Rule and

the Department's announcement demonstrate that the delay of the Borrower Defense Rule is part

and parcel of the Department's initiative to replace the Rule. In fact, in its public response to this

lawsuit, the Department explained that Secretary DeVos decided to "pause" the Rule because

"[t]he borrower-defense regulations suffer from substantive and procedural flaws that need to be

considered before imposing new burdens on regulated parties." Stacy Cowley, *18 States Sue*

*Betsy DeVos Over Student Loan Protections*, N.Y. Times (July 6, 2017), *available at*

https://www.nytimes.com/2017/07/06/business/ dealbook/massachusetts-betsy-devos-

lawsuit.html?mcubz=1, attached as Ex. 7 to Decl. of Gabrielle Crossnoe.

The Delay Rule has an impact on the regulated industry, affects the rights and obligations

of the parties involved, and functions as a rescission of the Borrower Defense Rule pending the

Department's new negotiated rulemaking. It is therefore a substantive rule, which implicates

procedural requirements on the part of the Department.

14

**2.  The Delay Rule Violates the APA Because the Department Did Not Provide for Notice and Comment or Negotiated Rulemaking**

Section 553 of the APA requires that notice of a proposed rulemaking "shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law." 5 U.S.C. § 553(b). An agency is required to "give interested persons an opportunity to participate in the [rulemaking] through submission of written data, views, or arguments . . . ." *Id.* at § 553(c). In addition, the HEA requires the Department to undertake a negotiated rulemaking process involving participants representing a wide range of groups when making rules affecting federal student loan programs. 20 U.S.C. § 1098a(b). Despite these requirements, the Department issued the Delay Rule without providing an opportunity for notice and comment and without undertaking negotiated rulemaking.

The Department cannot simply short-circuit its rulemaking requirements by delaying a final rule while it negotiates a new one. *See Envtl. Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 817-18 (D.C. Cir. 1983) (finding that postponement of the effective date of regulations was "in substance the promulgation of a regulation" that "was not excepted from the requirement of notice and comment," even though "the [postponement] was not expressed as a suspension of the regulations"); *see also Nat. Res. Def. Council*, 683 F.2d at 761 ("If the effective date were not 'part of an agency statement' such that material alterations in that date would be subject to the rulemaking provisions of the APA, it would mean that an agency could guide a future rule through the rulemaking process, promulgate a final rule, and then effectively repeal it, simply by indefinitely postponing its operative date."); *Public Citizen v. Steed*, 733 F.2d 93, 98 (D.C. Cir. 1984) ("'indefinite suspension' does not differ from revocation simply because the agency chooses to label it a suspension.").

15

It is well settled that delaying implementation of a final rule without notice and comment is a violation of the APA. *Clean Air Council*, 862 F.3d at 9 ("As we have explained, 'an agency issuing a legislative rule is itself bound by the rule until that rule is amended or revoked' and 'may not alter [such a rule] without notice and comment.'" (internal citation omitted)); *Nat. Res. Def. Council*, 683 F.3d at 761 (finding that the EPA's postponement of a rule's effective date "was subject to the APA's rulemaking requirements"); *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 206 (2d Cir. 2004) ("Therefore, because the February 2 delay was promulgated without complying with the APA's notice-and-comment requirements, and because the final rule failed to meet any of the exceptions to those requirements, it was an invalid rule."); s*ee also, Envtl. Def. Fund v. Gorsuch*, 713 F.2d at 818 ("Because of its substantive effect on the obligations of the owners of existing facilities and on the rights of the public, as prescribed by Congress, the [stay was] a rule, was not excepted from the requirement of notice and comment, and was invalid at least for the omission of notice and an opportunity for comment.").

There are two exceptions to the APA's notice and comment requirements. 5 U.S.C. § 553(b)(3)(A), (B). The first exception deals with "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). The second exception allows an agency to forgo notice and comment "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). The good cause exception also expressly applies to the HEA's negotiated rulemaking requirement. 20 U.S.C. § 1098a(b)(2).

Neither exception applies here, nor has the Department sought to invoke either exception. The Delay Rule, on its face, is not an interpretative rule, general statement of policy, or a rule of

agency organization, procedure, or practice. Nor does the Delay Rule contain a statement of good cause explaining why "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," as required where an agency seeks to invoke the good cause exception, 5 U.S.C. § 553(b)(3)(B). "Congress expected, and the courts have held, that the various exceptions to the notice-and-comment provisions of section 553 will be narrowly construed and only reluctantly countenanced." *State of N. J., Dept. of Envtl. Prot. v. E.P.A.*, 626 F.2d 1038, 1046 (D.C. Cir. 1980). "Scrutiny of a claimed exemption should be exacting where an agency seeks . . . to 'undo all it accomplished through its rulemaking without giving all parties an opportunity to comment on the wisdom of repeal.'" *Envtl. Def. Fund, Inc.*, 713 F.2d at 816-17. In determining whether an agency action falls into one of the exceptions, "[i]t is the substance of what the [agency] has purported to do and has done which is decisive." *Id.* at 816.

The Delay Rule constitutes a substantive rule, which affects the rights and obligations of the parties involved and operates as a rescission of the Borrower Defense Rule. In issuing the Delay Rule, the Department did not comply with the APA's notice and comment requirements or the HEA's negotiated rulemaking procedures. Accordingly, the Delay Rule should be held unlawful and set aside because it was issued without observance of procedure required by law. 5 U.S.C. § 706(2)(D).

## B. The Delay Rule Improperly Invokes and Fails to Comply with the Requirements of 5 U.S.C. § 705

The Department failed to comply with the requirements of the APA provision it invoked as the basis for its Delay Rule, 5 U.S.C. § 705. Section 705 provides:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an

agency action or to preserve status or rights pending conclusion of the review proceedings.

Despite purporting to rely on this provision, the Department failed to justify its stay on the basis of the CAPPS action and failed to apply the requisite legal standard applicable to a stay of agency action under § 705. The Department's improper invocation of 5 U.S.C. § 705 and its failure to meet § 705's requirements render the Delay Rule arbitrary, capricious, not in accordance with law, and in excess of the Department's statutory authority. 5 U.S.C. § 706(2)(A), (C).

1. **The Delay Rule Inappropriately Invokes Section 705 to Facilitate a Regulatory Reset and Fails to Justify the Delay of the Borrower Defense Rule on the Basis of the Pending Litigation**

The Department's invocation of 5 U.S.C. § 705 to delay the Borrower Defense Rule violates the APA. Under specific circumstances, § 705 permits an agency to postpone the effective date of an agency action, pending judicial review. Where an agency seeks to invoke § 705 in order to justify a stay of its regulation on the basis of pending litigation, the agency "must articulate[], at a minimum, a rational connection between its stay and the underlying litigation . . . ." *Sierra Club*, 833 F. Supp. at 34. An agency that does not wish to comply with its own regulations cannot invoke § 705 to stay the effective date of its regulations "simply because litigation . . . *happens to be pending*." *Id.* (emphasis in original). Moreover, an agency's attempt to use § 705 to stay an agency rule is inappropriate where "[t]he purpose and effect of the Delay Rule plainly are to stay the rules pending reconsideration, not litigation." *Id.* at 33. Such is the case here.

As in *Sierra Club*, the Department in its Delay Rule merely "paid lip service to the pending litigation." *Id.* at 34. The Delay Rule briefly summarizes the procedural history of the CAPPS litigation and states obliquely that "[t]he plaintiffs have raised serious questions" and

18

"identified substantial injuries." 82 Fed. Reg. at 27,621. However, the reasons cited in the Delay

Rule to support the stay are not tied to the existence or potential consequences of the CAPPS

action. Rather, the limited and unsubstantiated justification provided in the Delay Rule relates to

the Department's reconsideration of the Borrower Defense Rule and the avoidance of costs

imposed on postsecondary institutions and the federal government.

The language of the Delay Rule makes clear that the stay will last until the Rule is

replaced, irrespective of the CAPPS action timeline. The Delay Rule's stated goal of "allow[ing]

the Department to consider and conduct a rulemaking process" indicates that the delay is tied not

to the existence of the pending litigation, but to the "rulemaking process"—a process that may,

given the time required for the negotiated rulemaking, be considerably longer than the pendency

of the CAPPS action.[3] 82 Fed. Reg. at 27,622. The Delay Rule also states that the postponement

"ensures regulated parties will not incur costs that could be eliminated under any future

regulations the Department promulgates on these matters," *id*., showing, once again, that

regardless of the litigation result or the timing of the litigation, the Delay Rule is designed to stay

implementation until the Department replaces the Rule. Additionally, the Delay Rule refers to

costs expected to be incurred by the federal government during the period 2016 through 2026

and states that "[p]ostponing the effectiveness of the final regulations will help to avoid these

significant costs . . . ." *Id.* The avoidance of ten years of loan discharge costs is tied not to the

---

[3] Given the time constraints associated with undertaking a negotiated rulemaking, the earliest any new rule could take effect would be July 1, 2019. Under the HEA, "any regulatory changes . . . affecting [Title IV] programs . . . that have not been published in final form by November 1 prior to the start of the award year," which begins on July 1, "shall not become effective until the beginning of the second award year after such November 1 date." 20 U.S.C. § 1089(c).

CAPPS litigation, which will end long before 2026, but to the Department's decision to rescind and replace the regulations.

The overbreadth of the Delay Rule further demonstrates the incongruity between the CAPPS action and the Delay Rule. The Delay Rule seeks to stay the operation of additions to or revisions of portions of twenty-two sections of the final regulations.[4] By contrast, the CAPPS complaint expressly challenges additions or revisions to portions of five sections.[5] For example, the Delay Rule stays the implementation of additions to or revisions of provisions that govern automatic loan discharges for students who attend a school that closes. *See* 34 C.F.R. §§ 674.33, 682.402, & 685.214 *as proposed in* 81 Fed. Reg. 76,078, 76,080, & 76,082. These provisions, which only apply when a school has been closed for three years, are not challenged in the CAPPS action. The fact that the Delay Rule stays provisions of the rule not referred to in the CAPPS action clearly indicates that the Delay Rule is not properly tied to the litigation.[6]

Even as to the regulations challenged in the CAPPS action, the Department's attempt to characterize its stay of the Rule as necessary because of the "serious questions" raised by CAPPS and "substantial injuries" to regulated parties is contradicted by the fact that CAPPS itself did not seek a preliminary injunction to stay most of the challenged provisions. The only portions of the Rule that CAPPS moved to enjoin pending litigation were those provisions addressing schools' use of mandatory arbitration agreements and class action waivers. *CAPPS v. DeVos*, No-17-999,

---

[4] *See supra* at n. 2.

[5] 34 C.F.R. §§ 685.206(c) (CAPPS Cplt. ¶¶ 67, 70), 685.222 (CAPPS Compl. ¶ 69), 668.171(CAPPS Compl. ¶¶ 73-89), 668.41 (h) and (i) (CAPPS Compl. ¶ 91), 685.300 (e) and (f) (CAPPS Compl. ¶¶ 96-97).

[6] Even if the CAPPS lawsuit were to successfully invalidate certain provisions of the Rule, the unchallenged portions of the Rule would stand. The Rule contains multiple severability clauses, which provide that if any provision or subpart of the Rule is held to be invalid, the remainder of the Rule shall not be affected. 81 Fed. Reg. at 76,086, 76,089; 34 C.F.R. §§ 685.223, 685.310.

Motion for a Preliminary Injunction, ECF. No. 6, 6-1 (D.D.C. filed June 2, 2017). The Department's claim that the CAPPS action necessitates a delay of the Borrower Defense Rule therefore strains credulity where CAPPS did not see fit to request such an expansive delay of the Rule.

The Delay Rule fails to sufficiently connect the stay of the Borrower Defense Rule to the pending CAPPS action, despite purporting to rely on 5 U.S.C. § 705 to justify the delay. Rather, the Department is using the Delay Rule to facilitate its efforts to "review and revise the final regulations." 82 Fed. Reg. at 27,621-22. The Department's Delay Rule is therefore arbitrary, capricious, not in accordance with law, and in excess of the Department's statutory authority, in violation of the APA. 5 U.S.C. § 706(2)(A), (C).

## 2. The Delay Rule Failed to Apply the Requisite Legal Standard for a Stay Under 5 U.S.C. § 705

Even if the Department's invocation of 5 U.S.C. § 705 was appropriate, the Department failed to apply—or even acknowledge—the standard applicable to a stay of agency action under § 705. In order to postpone the effective date of an agency action under 5 U.S.C. § 705, an agency must apply the same standards that courts apply in issuing a preliminary injunction. *Sierra Club*, 833 F. Supp. 2d at 30 ("[T]he standard for a stay at the agency level is the same as the standard for a stay at the judicial level: each is governed by the four-part preliminary injunction test applied in this Circuit."); *see also Affinity Healthcare Servs., Inc. v. Sebelius*, 720 F. Supp 2d 12, 15 n.4 (D.D.C. 2010) (noting that courts review "[m]otions to stay agency action pursuant to [5 U.S.C. § 705] . . . under the same standards used to evaluate requests for interim injunctive relief"); *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm.*, 259 F.2d 921, 925 (D.C. Cir. 1958); *cf.* Administrative Procedure Act, Report of the Committee on the Judiciary on S. 7, Senate Report No. 752, reprinted in Administrative Procedure Act, Legislative History,

79th Congress, 1944-46, Sen. Doc. No. 248 at 277 ("This section permits *either agencies or courts, if the proper showing be made*, to maintain the status quo" (emphasis added)).[7] The four-part test requires an agency to set forth and consider: (1) the likelihood of success on the merits, (2) the likelihood that the party that would benefit from a stay would be irreparably harmed absent relief, (3) whether other members of the public would be harmed by the stay, and (4) the public interest in granting the stay. *Sierra Club*, 833 F. Supp. 2d at 30 (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). An agency's failure to "set forth its consideration of the four factors and its attendant conclusions of law" renders an agency's delay of agency action under § 705 arbitrary and capricious. *Id.* at 31. An agency has not engaged in "reasoned decisionmaking" where its action was not "based on a consideration of the relevant factors . . . ." *Judulang v. Holder*, 565 U.S. 42, 52 (2011).

In this case, the Department's Delay Rule does not employ or so much as mention the four-part preliminary injunction test. First, the Department's Delay Rule does not refer to CAPPS's probability of success on the merits, nor does it demonstrate or even conclude that CAPPS is likely to prevail on its claims. The only reference in the Delay Rule to the substantive merits of the litigation is the statement that CAPPS raised "serious questions concerning the validity of certain provisions of the final regulations." 82 Fed. Reg. at 27,621. The existence of "serious questions" does not constitute a likelihood of success on the merits, and merely

---

[7] Federal administrative agencies reviewing requests for stays under § 705 have regularly applied analyses consistent with the standard for injunctive relief. *See, e.g.*, In the Matter of Pub. Serv. Co. of New Hampshire, Et Al. (Seabrook Station, Units 1 & 2), 1 E.A.D. 389 (E.P.A. Aug. 12, 1977); Fees Applicable to Natural Gas Pipelines: Texas Gas Transmission Corp., 51 Fed. Reg. 43,599 (Federal Energy Regulatory Commission, December 3, 1986); Matter of California Dental Ass'n. Docket No. 9259, 1996 FTC LEXIS 277, at *2-*3 n.l (Federal Trade Comm'n May 22, 1996); Special Counsel v. Starrett, 28 M.S.P.R. 425 (Merit Systems Protections Bd. July 24, 1985).

invoking the existence of such questions falls far short of satisfying the first prong of the requisite four-part test. *See Affinity Healthcare Services, Inc. v. Sebelius*, 720 F. Supp. 2d 12, 15 (D.D.C. 2010) (noting that postponement of agency action requires a "'substantial indication' of likely success on the merits"). Moreover, the Department cannot simply base its delay of the Rule on a cursory statement accepting the merits of some or all of CAPPS arguments. The D.C. Circuit has explained that, "[t]he court is not bound to accept, and indeed generally should not uncritically accept, an agency's concession of a significant merits issue." *Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 557 (D.C. Cir. 2015).

Second, the Department's Delay Rule does not refer to irreparable harm or attempt to show that CAPPS will suffer irreparable harm in the absence of a stay. To satisfy the irreparable injury prong, irreparable injury must be "*likely*." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 11 (2008) (emphasis in original). In addition, to be irreparable, an injury "must be both certain and great; it must be actual and not theoretical." *Bill Barrett Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 12d 331 (D.D.C. 2009) (*quoting Chaplaincy of Full Gospel Churches v. England,* 454 F. 3d 290, 297 (D.C. Cir. 2006)). Monetary loss constitutes irreparable harm "only where the loss threatens the very existence of the [harmed party's] business." *Id.* The Delay Rule's only specific references to the effect of the postponement on Title IV participating schools— presumably including CAPPS member institutions—are to the potential costs of "modify[ing] their contracts in accordance with the arbitration and class action waiver regulations" and the costs of compliance with certain financial responsibility triggers that "could" be incurred. 82 Fed. Reg. at 27,621. The costs cited in the Delay Rule are neither quantified nor itemized, nor are they shown to be certain, great, imminent, or a threat to the existence of CAPPS's members' business.

Third, the Department's Delay Rule fails to consider the harm to other members of the public that would be caused by delaying the implementation of the Borrower Defense Rule. In determining whether a stay is appropriate, a court or agency must consider the harm to others that will result from the staying of agency action. *Sierra Club*, 833 F. Supp. 2d. at 30. The Rule subject to the Delay Rule was explicitly designed to "protect student loan borrowers from misleading, deceitful, and predatory practices of, and failures to fulfill contractual promises by, institutions participating in the Department's student aid programs," 81 Fed. Reg. at 75,926. As discussed *supra* on pages 5 and 6, it does so by, *inter alia*: (1) creating "clear, fair, and transparent processes to seek debt relief"; (2) creating mechanisms for automatic and group discharges in certain contexts (including in cases of widespread misconduct and school closures); (3) holding schools financially accountable where the schools' misconduct results in discharge of borrowers' loans; (4) requiring schools with poor loan repayment outcomes to provide warnings about their loan repayment rates in order to help students make informed choices about their education; and (5) prohibiting schools participating in the Direct Loan Program from including mandatory arbitration agreements or class action waivers in student enrollment agreements.

Despite the numerous benefits and protections established by the Rule, the Delay Rule refers to the effect of its stay on students in a single sentence, stating that the delay "will not prevent student borrowers from obtaining relief because the Department will continue to process borrower defense claims under existing regulations that will remain in effect during the postponement." 82 Fed. Reg. at 27,621. The Department's cursory statement ignores the fact that the delay of significant portions of the Rule deprives students of additional benefits established by the Rule that are *not* available under the regulations currently in effect. The Delay Rule does not mention or seek to address the harm caused to students by the loss of such benefits and

24

protections, including, *inter alia*, the postponement of new standards that streamline the loan discharge process, provide automatic loan discharges for groups of students victimized by widespread school misconduct, and require schools with poor loan repayment outcomes to provide enhanced disclosures. The Delay Rule also fails to mention the harm to students that will result from the indefinite delay of provisions enabling borrowers to bring legal actions against abusive schools and strengthening financial responsibility standards that deter abusive conduct. The loss of these protections is a substantial and in some cases irreparable harm to students who, in the absence of the Rule, may be unable to obtain loan discharges in cases of school fraud and misconduct, will be unable to bring actions in court against abusive institutions, and may enroll in abusive institutions without receiving the warnings and information necessary to make an informed decision about their education.

Moreover, despite its assertion that borrowers will be able to obtain relief under existing regulations, the Department has not continued to process borrower defense claims under such regulations; in a letter to various U.S. Senators, the Department conceded that—as of July 7, 2017—it had processed *none* of the more than 65,000 borrower defense claims currently pending. *See* July 7, 2017 Letter to Senators.[8] In fact, senior Department officials no longer even receive regular reports on the status of borrower defense claims "pending the review of the borrower defense process by the New Administration." *Id.*

Fourth, the Delay Rule does not mention or address the public interest. The closest the Delay Rule comes to considering this factor is its inclusion of one oblique statement that "the Federal government and ultimately the Federal taxpayer" will avoid $16.6 billion in costs if the

---

[8] Included in 65,000 claims are 14,949 claims received between January 20, 2017 and July 7, 2017. *See* July 7, 2017 Letter to Senators.

regulations are postponed. 82 Fed. Reg. at 27,622. The cost savings referred to in the Delay Rule

reflect an estimate of loan discharges to which students will be entitled by virtue of school fraud

or misconduct during the 2016-2026 period, and include $381 million in discharges for students

who attended schools that closed during 2014 through 2016. *Id.* at 27,621. The Department's

reference to these potential cost-savings as a benefit of delay relies on the callous and erroneous

assumption that it is in the public interest to saddle students who have been victimized by fraud

and harmed by school closings with the resulting costs. Furthermore, this position ignores the

reality that students were already entitled to a defense to repayment of their loans in the case of

school fraud and misconduct prior to the promulgation of the Borrower Defense Rule. *See* 81

Fed. Reg. at 75,926 ("Section 685.206(c), governing defenses to repayment, has been in place

since 1995 but, until recently, has rarely been used."). The provisions that the Department is

seeking to delay in order to save costs did not *establish* borrowers' right to relief in these

circumstances; they created simpler and more streamlined processes to facilitate borrowers'

access to relief. As such, any cost savings to the government will arise from the inability of

students injured by their schools to obtain loan discharges to which they are entitled. It is not in

the public interest to shift the cost of schools' misconduct to victimized students by making it

harder for students to access such relief.

      The Delay Rule also ignores the benefits that taxpayers would receive from the

implementation of the Borrower Defense Rule. One stated purpose of the Rule is to "protect

taxpayers by requiring that financially risky institutions are prepared to take responsibility for

losses to the government for discharges of and repayments for Federal Student loans." 81 Fed.

Reg. at 75,926. The Rule is expressly designed to hold schools accountable for the costs of their

misconduct and to protect taxpayers by denying financially risky institutions access to Title IV

funds. *See* 81 Fed. Reg. at 76,073; 34 C.F.R. § 668.171(b), (c). The Delay Rule does not address

these public benefits or the public interest that would be served by provisions that would enable

borrowers to seek redress directly from their schools by filing their own claims in court. 81 Fed.

Reg. at 75,926-27. The Department also fails to address one of the central public benefits of the

Borrower Defense Rule—the deterrence of fraudulent and unfair conduct on the part of post-

secondary schools. 81 Fed. Reg. at 75,926. There can be little doubt that it is in the public

interest to prevent misconduct on the part of academic institutions and ensure that federal funds

are not used to finance predatory schools.

The Department's failure to employ the requisite four-factor test in seeking to invoke

§ 705 to delay a duly promulgated regulation is a violation of the APA. To properly stay agency

action under § 705, an agency, like a district court, "*must* set forth its consideration of the [four]

factors and its attendant conclusions of law[.]'" *Sierra Club*, 833 F. Supp. 2d at 31 (emphasis in

original). The Department's failure to do so is arbitrary, capricious, and not in accordance with

law. The Delay Rule should therefore be vacated.

### C.   The Delay Rule Violates the APA Because the Department Did Not Provide an Adequate Explanation for Its Stay of the Borrower Defense Rule Including a Reasoned Analysis for Its Reversal of Position Regarding the Rule

The explanation provided in the Department's cursory two-page Delay Rule is

insufficient to satisfy the APA's requirement that an agency provide a satisfactory explanation

for its action and a reasoned analysis for rescinding a rule. When promulgating a rule, an agency

"must examine the relevant data and articulate a satisfactory explanation for its action including

a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n

of U.S., Inc.*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168

(1962)). To satisfy the APA, an agency reversing or departing from a previous policy or

rescinding a rule "is obligated to supply a reasoned analysis for the change." *Id.* at 42; *see also*

*Encino Motorcars, LLC v. Navaro*, 136 S. Ct. 2117, 2126 (2016) (when changing its position,

"[an] agency must at least display awareness that it is changing position and show that there are

good reasons for the new policy" (internal quotation marks omitted)). In this case, the Delay

Rule fails to offer a reasoned analysis explaining the Department's change of position regarding

the Borrower Defense Rule, fails to support its decision with facts, and wholly fails to consider

the benefits of the Rule. As such, the Delay Rule is arbitrary and capricious, in violation of the 5

U.S.C. § 706(2)(A).

   As explained *supra* on pages 13 and 14, the Delay Rule is part of the Department's

"regulatory reset." The Delay Rule operates as a rescission of the Borrower Defense Rule,

explicitly justifying the stay on the grounds that such "postponement will allow the Department

to consider and conduct a rulemaking process to review and revise the final regulations and

ensures regulated parties will not incur costs that could be eliminated under any future

regulations the Department promulgates on these matters." 82 Fed. Reg. at 27,622. However, the

Department failed to provide any reasoned analysis for the course change facilitated by the Delay

Rule, both with respect to the Department's decision to replace the Rule and its position that

regulated parties should be protected from incurring costs that were intended by the Rule. *See*

*Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S at 42 (explaining that an agency's failure to

supply a reasoned analysis for changing its course by rescinding or modifying a rule renders the

agency's action arbitrary and capricious). In an effort to justify its delay, the Department

concedes without any analysis that "plaintiffs [in the CAPPS litigation] have raised serious

questions concerning the validity of certain provisions of the final regulations." 82 Fed. Reg. at

27,621. Such over-generalized and unsubstantiated acceptance of CAPPS's litigation position

cannot substitute for actual explanation or analysis. As the D.C. Circuit has acknowledged, "[i]f an agency could engage in rescission by concession, the doctrine requiring agencies to give reasons before they rescind rules would be a dead letter." *Mexichem Specialty Resins, Inc.*, 787 F.3d at 557.

One of the Delay Rule's primary justifications for the stay is the avoidance of costs to regulated parties. The Delay Rule states that the stay may save institutions from "substantial" costs, namely the costs of modifying their contracts and the costs associated with "financial responsibility trigger provisions." 82 Fed. Reg. at 27,621. But the Department does not offer any findings or direct evidence to support this conclusion. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."); *see also Burlington Truck Lines, Inc.*, 371 U.S. at 168 ("The agency must make findings that support its decision, and those findings must be supported by substantial evidence."). In fact, the Delay Rule merely states that the Rule "could" impose costs on the regulated parties. 82 Fed. Reg. at 27,621. The Department's conjectural and unsupported statements are insufficient to satisfy the requirements of the APA. Any action based on these summary conclusions, therefore, is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

Even where the Department refers to some facts, it fails to "articulate any rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc.*, 371 U.S. at 168. The Department purports to justify its delay on the ground that the government will save money if the delayed provisions are not implemented. However, the Delay Rule supports

this rationale by enumerating only generalized costs of the Rule over a ten year period.[9] It does not connect these costs to the alleged savings that will result from delaying the provisions identified in the Delay Rule or explain how these costs differ from costs that would be incurred under regulations currently in place. Additionally, the Department does not offer a reasoned analysis explaining its change of position, namely that the Department now views as a benefit the avoidance of costs that were expressly envisioned by the Borrower Defense Rule. The Department's failure to provide such analysis and its failure to articulate any connection between the identified costs and the delay of the Borrower Defense Rule renders the Delay Rule arbitrary and capricious.

Additionally, the Delay Rule fails to consider a critical effect of the delay: the elimination of the Rule's benefits to students and taxpayers. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 ("Normally, an agency rule would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem."); *Sierra Club*, 833 F. Supp. 2d at 18. A reasoned analysis considers both the "advantages and disadvantages"—the costs and benefits of agency action. *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2707 (2015) ("reasonable regulation ordinarily requires paying attention to the advantages *and* the disadvantages of agency decisions." (emphasis in original)); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 54 ("The agency is correct to look at the costs as well as the benefits of [the regulation]"). While the Department cites the estimated costs of the Rule to taxpayers in the Delay Rule, it fails to consider the benefits of the Rule to taxpayers from provisions of the Rule that "protect taxpayers

---

[9] The Delay Rule identifies the overall net cost of the *entire* Rule as $16.6 billion over the 2016-2026 loan cohorts as well as the cost of $381 million for cohorts 2014-2016 "attributable to the regulations providing for a three-year automatic closed school discharge." 82 Fed. Reg. at 27,621-22.

by requiring that financially risky institutions are prepared to take responsibility for losses to the government for discharges of and repayments for Federal Student loans." 81 Fed. Reg. at 75,926.

The only reference to students in the Department's justification of the Delay Rule is a summary statement claiming students would not be harmed because borrower defense claims would continue to be processed under existing regulations. As noted earlier, this statement wholly ignores the benefits established by the new Rule that students will lose because of the Department's action. Furthermore, as discussed *supra* on page 25, this statement is contradicted by the Department's own records, which show that, as of July 7, 2017, the Department had processed *none* of the more than 65,000 pending borrower defense claims. July 7, 2017 Letter to Senators. "[A]n agency decision is arbitrary and must be set aside when it rests on a crucial factual premise shown by the agency's records to be indisputably incorrect." *Mizerak v. Adams*, 682 F.2d 374, 376 (2d Cir. 1982); *see also Resolute Forest Prod., Inc. v. U.S. Dep't of Agric.*, 187 F. Supp. 3d 100, 123 (D.D.C. 2016) ("[W]here an agency has relied on incorrect or inaccurate data or has not made a reasonable effort to ensure that appropriate data was relied upon, its decision is arbitrary and capricious and should be overturned.").

In addition to its inconsistency with the Department's own records, the reasoning provided in the Delay Rule is internally contradictory. The Delay Rule purports to help the federal government avoid those costs associated with discharging borrower debt while simultaneously claiming that borrowers will be able to obtain discharges under existing regulations during the postponement of the Rule. Since the cost savings described in the Delay Rule depend on borrowers *not* receiving discharges, the Department's statement that the delay of the Rule will lead to these savings directly contradicts its claims that borrowers will be able to

obtain relief under existing regulations during the delay. This internal contradiction renders the Delay Rule arbitrary and capricious.

The Delay Rule does not offer a reasoned analysis for the Department's change of position regarding the Borrower Defense Rule, does not offer any satisfactory explanation for its delay of the Rule, and fails to consider critical aspects of the Department's stay. The Delay Rule is therefore arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2)(A).

### D. The Department's Improper Invocation of 5 U.S.C. § 705 and Its Failure to Provide an Adequate Justification for Its Delay of the Borrower Defense Rule Necessitate Vacatur of the Delay Rule

The Department's failure to provide an adequate justification or explanation for its delay of the Borrower Defense Rule and its improper invocation of 5 U.S.C. § 705 require the Delay Rule to be vacated. "[I]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 50; *see also Manin v. NTSB,* 627 F.3d 1239, 1245 (D.C. Cir. 2011) (providing that courts "generally may not uphold agency action on a basis other than that relied upon by the agency"); *see also Morgan Stanley Capital Group, Inc.*, 554 U.S. at 544 (explaining that courts will not uphold an agency decision "where the agency has offered a justification in court different from what it provided in its opinion"); *Sierra Club*, 833 F. Supp. 2d at 34 (same).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for summary judgment and order appropriate relief.

SUBMITTED this 26th day of September, 2017.

FOR THE COMMONWEALTH OF
MASSACHUSETTS

MAURA HEALEY

ATTORNEY GENERAL

By: */s/ Yael Shavit*
     Yael Shavit
     Max Weinstein
     Peter Leight
     Assistant Attorneys General
     Office of the Massachusetts Attorney General
     One Ashburton Place
     Boston, MA 02108
     (617) 963-2197 (Shavit)
     (617) 963-2499 (Weinstein)
     (413) 523-7706 (Leight)
     Yael.Shavit@state.ma.us
     Max.Weinstein@state.ma.us
     Peter.Leight@state.ma.us

     FOR THE STATE OF CALIFORNIA
     XAVIER BECERRA
     CALIFORNIA ATTORNEY GENERAL
     Bernard A. Eskandari
     Deputy Attorney General
     300 South Spring Street, Suite 1702
     Los Angeles, California 90013
     (213) 897-2652
     bernard.eskandari@doj.ca.gov

     FOR THE STATE OF CONNECTICUT
     GEORGE JEPSEN
     ATTORNEY GENERAL
     Perry Zin-Rowthorn
     Deputy Attorney General
     Joseph J. Chambers
     Assistant Attorney General
     Connecticut Office of Attorney General
     PO Box 120
     Hartford, CT 06141-0120
     (860) 808-5270
     joseph.chambers@ct.gov

     FOR THE STATE OF DELAWARE
     MATTHEW P. DENN
     ATTORNEY GENERAL

Aaron Goldstein
State Solicitor
Carvel State Building, 6th Floor
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Aaron.goldstein@state.de.us

FOR THE DISTRICT OF COLUMBIA
KARL A. RACINE
ATTORNEY GENERAL
Philip Ziperman
Assistant Attorney General
Attorney General for the District of Columbia
441 4th Street, N.W., 6th Floor
Washington, DC 20001
(202) 442-9886
Philip.Ziperman@dc.gov

FOR THE STATE OF HAWAII
DOUGLAS S. CHIN
ATTORNEY GENERAL OF HAWAII
Bryan C. Yee
Deputy Attorney General
425 Queen Street
Honolulu, Hawaii 96813
(808) 586-1180
bryan.c.yee@hawaii.gov

PEOPLE OF THE STATE OF
ILLINOIS, by LISA MADIGAN
ATTORNEY GENERAL OF ILLINOIS
Susan Ellis
Consumer Fraud Bureau, Chief
Joseph Sanders
Assistant Attorney General
Consumer Fraud Bureau
Office of the Illinois Attorney General
100 W. Randolph St., 12th Fl.
Chicago, IL 60601
(312) 814-6796 (Joseph)
sellis@atg.state.il.us
jsanders@atg.state.il.us

34

FOR THE STATE OF IOWA
THOMAS J. MILLER
ATTORNEY GENERAL
Jessica Whitney
Director - Consumer Protection
Office of the Attorney General of Iowa
1305 E. Walnut St.
Des Moines, Iowa 50319
(515) 281-8772
Jessica.Whitney@iowa.gov

FOR THE STATE OF MARYLAND
BRIAN E. FROSH
ATTORNEY GENERAL
Christopher J. Madaio
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
(410) 576-6585
Cmadaio@oag.state.md.us

FOR THE STATE OF MINNESOTA
LORI SWANSON
ATTORNEY GENERAL
Kathryn I. Landrum
Assistant Attorney General
445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2130
(651) 757-1189 (Voice)
(651) 296-1410 (TTY)
kathryn.landrum@ag.state.mn.us

FOR THE STATE OF NEW MEXICO
HECTOR BALDERAS
ATTORNEY GENERAL
Joseph Yar
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501

(505) 490-4060
jyar@nmag.gov

FOR THE STATE OF NEW YORK
ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL OF NEW YORK
Jane M. Azia
Chief, Bureau of Consumer Frauds and
Protection
120 Broadway, 3rd floor
New York, NY 10271
Tel.: (212) 416-8727
Jane.azia@ag.ny.gov

FOR THE STATE OF NORTH CAROLINA
JOSH STEIN
ATTORNEY GENERAL OF NORTH
CAROLINA
Sripriya Narasimhan (D.C. Bar No.: 1029549)
Deputy General Counsel
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC  27603
P.O. Box 629
Raleigh, NC  27602
(919) 716-6421
SNarasimhan@ncdoj.gov

FOR THE STATE OF OREGON
ELLEN F. ROSENBLUM
ATTORNEY GENERAL
Andrew Shull
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301
(503) 934-4400
Andrew.shull@doj.state.or.us

FOR THE COMMONWEALTH OF
PENNSYLVANIA
JOSH SHAPIRO
ATTORNEY GENERAL

36

John M. Abel
Senior Deputy Attorney General
Office of the Pennsylvania Attorney General
Bureau of Consumer Protection
15th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 783-1439
jabel@attorneygeneral.gov

Jesse Harvey
Senior Deputy Attorney General
Office of the Pennsylvania Attorney General
Bureau of Consumer Protection
6th Floor Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219
(412) 565-2883
jharvey@attorneygeneral.gov

FOR THE STATE OF RHODE ISLAND
PETER F. KILMARTIN
ATTORNEY GENERAL
Edmund F. Murray, Jr.
Special Assistant Attorney General
Rhode Island Department of Attorney General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400
emurray@riag.ri.gov

FOR THE STATE OF VERMONT
THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL
Christopher J. Curtis
State of Vermont
Office of the Attorney General
Chief, Public Protection Division
109 State St.
Montpelier, VT 05609
(802) 828-5586
christopher.curtis@vermont.gov

FOR THE COMMONWEALTH OF
VIRGINIA
MARK R. HERRING
ATTORNEY GENERAL
Samuel T. Towell
Deputy Attorney General, Civil Litigation
Cynthia E. Hudson
Chief Deputy Attorney General
Barbara Johns Building
202 N. Ninth St.
Richmond, Virginia 23219
(804) 786-6731
stowell@oag.state.va.us

FOR THE STATE OF WASHINGTON
ROBERT W. FERGUSON
ATTORNEY GENERAL
Darwin P. Roberts
Deputy Attorney General
Jeffrey T. Sprung (D.C. Bar No.: 384880)
Benjamin J. Roesch
Cynthia Alexander
Assistant Attorneys General
Office of the Washington Attorney General
1125 Washington St. SE
P.O. Box 40100
Olympia, WA 98504
(206) 326-5492 (Sprung)
darwinr@atg.wa.gov
jeff.sprung@atg.wa.gov
benjaminr@atg.wa.gov
cynthiaa@atg.wa.gov