# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* XAVIER BECERRA, Attorney General, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF HAWAII, PEOPLE OF THE STATE OF ILLINOIS, STATE OF IOWA, STATE OF MAINE, STATE OF MARYLAND, STATE OF MINNESOTA, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA *ex rel.* JOSH STEIN, Attorney General, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, *ex rel.* MARK R. HERRING, Attorney General, and STATE OF WASHINGTON,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, and BETSY DEVOS, in her official capacity as Secretary of Education,<br><br>      *Defendants*. | Civil Action No. 17-1331 (RDM) |

## BRIEF OF THE TRADE ASSOCIATION COALITION AS *AMICI CURIAE*

Megan H. Berge (D.C. Bar No. 983714)
Baker Botts L.L.P.
1299 Pennsylvania Ave NW
Washington, DC 20004
(202) 639-7700
megan.berge@bakerbotts.com

Samara L. Kline (*pro hac vice* pending)
Baker Botts L.L.P.
2001 Ross Avenue
Suite 600
Dallas, TX 75201
(214) 953-6825
samara.kline@bakerbotts.com

*Counsel for* Amici Curiae
*Chamber of Commerce of the United States of America,*
*American Fuel & Petrochemical Manufacturers,*

*American Petroleum Institute,*
*National Association of Home Builders, and*
*National Mining Association*

December 8, 2017

# TABLE OF CONTENTS

IDENTITY AND INTEREST OF *AMICI CURIAE*...................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 3

ARGUMENT ......................................................................................................................... 4

I.      Congress expressly provided different standards for agencies and courts under § 705..................................................................................................................................4

II.     Section 705's statutory context and legislative history confirms that Congress did not intend to require agencies to conduct the injunction test...............................................5

III.    Agency and judicial precedent demonstrate that § 705 does not require agencies to conduct the injunction test. ...............................................................................................10

IV.   Different standards for agencies and courts under § 705 make practical sense.................13

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adamo Wrecking Co. v. United States,*
434 U.S. 275 (1978) ............................................................................................6

*Am. Elec. Power Co. v. Connecticut,*
564 U.S. 410 (2011) ..........................................................................................15

*Ass'n of Nat'l Advertisers, Inc. v. FTC,*
627 F.2d 1151 (D.C. Cir. 1979) ........................................................................13

*Bannercraft Clothing Co. v. Renegotiation Bd.,*
466 F.2d 345 (D.C. Cir. 1972) .......................................................................6, 7

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988) ............................................................................................8

*Clean Air Council v. Pruitt,*
862 F.3d 1 (D.C. Cir. 2017) ..............................................................................12

*Cuomo v. U.S. Nuclear Regulatory Comm'n,*
772 F.2d 972 (D.C. Cir. 1985) ..........................................................................12

*Director, Office of Workers' Compensation Programs v. Greenwich Collieries,*
512 U.S. 267 (1994) ............................................................................................9

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006) ............................................................................................6

*FCC v. Pottsville Broad. Co.,*
309 U.S. 134 (1940) ............................................................................................7

*In re Exec. Office of President,*
215 F.3d 20 (D.C. Cir. 2000) ............................................................................15

*King v. Burwell,*
135 S. Ct. 2480 (2015) ........................................................................................5

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,*
463 U.S. 29 (1983) ............................................................................................12

*Recording Indus. Ass'n of Am. v. Copyright Royalty Tribunal,*
662 F.2d 1 (D.C. Cir. 1981) ...................................................................11, 12, 14

*Reinecke v. Loper*,
　　77 F. Supp. 333 (D. Haw. 1948) ................................................................6, 14

*Russello v. United States*,
　　464 U.S. 16 (1983) ..............................................................................................5

*S. Shrimp Alliance v. United States*,
　　33 C.I.T. 560 (2009) .....................................................................................11, 12

*Scripps-Howard Radio, Inc. v. FCC*,
　　316 U.S. 4 (1942) ...........................................................................................6, 7

*Sierra Club v. Jackson*,
　　833 F. Supp. 2d 11 (D.D.C. 2012) ................................................................ passim

*Vasquez v. Grunley Constr. Co.*,
　　200 F. Supp. 3d 93 (D.D.C. 2016) ..........................................................................9

*Vermont Yankee Nuclear Power Corp. v. NRDC*,
　　435 U.S. 519 (1978) ..........................................................................................13

*Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*,
　　259 F.2d 921 (D.C. Cir. 1958) .............................................................................12

*Wirtz v. Glass Bottle Blowers Ass'n*,
　　389 U.S. 463 (1968) ............................................................................................5

*Yakus v. United States*,
　　321 U.S. 414 (1944) ............................................................................................6

**STATUTES**

5 U.S.C. § 705 ...................................................................................... passim

5 U.S.C. § 706(2)(A) .....................................................................................12

***FEDERAL REGISTER* NOTICES**

56 Fed. Reg. 27,332 (June 13, 1991) ..............................................................15

59 Fed. Reg. 43,048 (Aug. 22, 1994) ..............................................................11

60 Fed. Reg. 22,228 (May 4, 1995) ................................................................14

60 Fed. Reg. 26,828 (May 19, 1995) ..............................................................11

60 Fed. Reg. 50,426 (Sept. 29, 1995) .............................................................14

60 Fed. Reg. 54,949 (Oct. 27, 1995) ..............................................................11

61 Fed. Reg. 28,508 (June 5, 1996) ......................................................................13, 14

67 Fed. Reg. 47,296 (July 18, 2002) ...........................................................................11

73 Fed. Reg. 67,107 (Nov. 13, 2008)......................................................................10, 11

76 Fed. Reg. 59,896 (Sept. 28, 2011) ..........................................................................10

82 Fed Reg. 27,621 (June 16, 2017) ..............................................................................3

**LESGISLATIVE HISTORY**

Appendix to Attorney General's Statement Regarding Revised Committee Print
of October 5, 1945, *reprinted in* Administrative Procedure Act, Legislative
History, S. Comm. on the Judiciary, 79th Cong. 223, 230 (1944–46) ...........................7

Attorney General's Manual on the Administrative Procedure Act (1973),
*unabridged republication of 1st ed. (1947)* ................................................................8, 9

H.R. Rep. 79-1980 (1946)..............................................................................................9

Pursuant to Local Rule 7(o), the Chamber of Commerce of the United States of America (the "Chamber"), American Fuel & Petrochemical Manufacturers ("AFPM"), American Petroleum Institute ("API"), National Association of Home Builders ("NAHB"), and the National Mining Association ("NMA") (collectively, the "Trade Association Coalition" or the "Coalition") submit this brief as *amici curiae.*

This brief addresses only the standard that governs the Department of Education's (the "Department") exercise of discretion to postpone the effective date of agency action under 5 U.S.C. § 705.  The Coalition supports the Department's position that § 705 requires the agency to make a finding that "justice so requires" the postponement, but does not require application of the four-factor test for preliminary injunctions.  This brief opposes Plaintiffs' position on that issue, but does not address Plaintiffs' other grounds for summary judgment.

## IDENTITY AND INTEREST OF *AMICI CURIAE*

The Coalition has a strong interest in ensuring that agencies maintain the flexibility and discretion Congress provided them in the Administrative Procedure Act ("APA") to postpone the implementation of final agency actions.[1]  Because the APA governs rulemaking and other agency actions by a wide variety of federal agencies, ensuring that the stay provision of the APA in 5 U.S.C. § 705 is correctly interpreted has broad implications beyond the particulars of this case.  The Coalition and their members are regulated by numerous federal agencies and under a broad array of federal statutes and regulations.  By authorizing agencies to stay their own actions pending judicial review, § 705 allows agencies to prevent any disruption that may result from forcing immediate compliance with a new rule that might be vacated or significantly modified as

---

[1] The Trade Association Coalition certifies that no party's counsel has authored this *amicus* brief in whole or in part.  Further, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person—other than the *amici curiae*, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief.

a result of a court decision or the agency's own initiative.  The Coalition and their members rely on agencies' ability to use § 705 to respond to concerns about unjustified regulatory impacts in a timely, reliable manner.  Unduly restricting agencies' authority and ability to issue stays under § 705 would increase the likelihood of unnecessary regulatory burdens being imposed on the Coalition and their members across a wide range of statutory and regulatory contexts.

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation, representing 300,000 direct members and representing indirectly the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every geographic region of the United States.  The Chamber represents the interests of its members in matters before the courts, Congress, and the Executive Branch.  To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the National business community, like this one.

AFPM is a national trade association whose members comprise virtually all United States refining and petrochemical manufacturing capacity.  AFPM's members supply consumers with a wide variety of products that are used daily in homes and businesses.

API is a national trade association that represents all aspects of America's oil and natural gas industry.  API's members include oil producers, refiners, suppliers, marketers, pipeline operators, and marine transporters, as well as supporting service and supply companies.  API's mission is to promote safety across the industry globally and to support a strong U.S. oil and natural gas industry.

NAHB is a not-for-profit trade association comprised of more than 700 state and local home builders associations.  NAHB's purpose is to promote the general commercial, professional, and legislative interests of its approximately 140,000 builder and associate

members throughout the United States.  NAHB's membership includes entities that construct and supply single-family homes, as well as apartment, condominium, multi-family, commercial, and industrial builders, land developers, and remodelers.

NMA is the national trade association of the mining industry.  NMA's members include the producers of most of the nation's coal, metals, industrial, and agricultural minerals; the manufacturers of mining and mineral processing machinery, equipment and supplies; and the engineering and consulting firms, financial institutions and other firms serving the mining industry.

## SUMMARY OF ARGUMENT

Plaintiffs' claim that § 705 required the Department to conduct the four-factor preliminary injunction test before issuing its rule to delay the effective dates of the "Borrower Defense Rule,"[2] rests on a single, non-binding opinion, *Sierra Club v. Jackson.*  833 F. Supp. 2d 11 (D.D.C. 2012).  However, the plain text, structure, and legislative history of § 705, as well as relevant agency and judicial precedent, and the practical considerations associated with an *agency's* exercise of discretion all support the Department's position.  This Court should reject Plaintiffs' position.

Agencies like the Department *may* consider the injunction test factors as one way to show that "justice so requires" postponement of agency action.  But that approach is not the exclusive vehicle for exercising § 705 authority, and the Department is not *required* to undertake the same analysis that a court considering an application for an injunction must.  Agencies retain far more discretion, and it would be improper to grant summary judgment to Plaintiffs or to judge the Department's action based on its decision not to apply the judicial test for granting injunctions.

---

[2] 82 Fed Reg. 27,621 (June 16, 2017).

Instead, to the extent that this Court determines that it has jurisdiction to review the Department's action at all, it should do so under the ordinary arbitrary and capricious standard. That standard requires that the Department's determination be reasonable and reasonably explained, but does not require that it make the specific findings expected from courts sitting in equity.

## ARGUMENT

### I.    Congress expressly provided different standards for agencies and courts under § 705.

Section 705's text establishes separate and distinct standards for agencies and courts: agencies may issue stays when "justice so requires," whereas courts may do so "on such conditions as may be required and to the extent necessary to prevent irreparable injury." Section 705 provides:

> When an agency finds that *justice so requires*, it may postpone the effective date of action taken by it, pending judicial review.  On such conditions as may be required and to the extent necessary *to prevent irreparable injury*, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705 (emphases added).  If Congress meant to apply the same standard to both agencies and courts, it would have needed just one sentence in § 705, not two.  Instead, Congress addressed the two separately—and in a meaningful order.

The first sentence refers only to agencies in setting forth the "justice so requires" standard.  The second sentence addresses the role of the courts.  Instead of the deferential standard that allows an agency to stay its own rule if the "agency finds that justice so requires," courts are directed to the standard principles of equity, including a specific focus on the "irreparable injury," which is a key factor in the preliminary injunction test that Plaintiffs seek to impose on the Department in this case. *See Sierra Club*, 833 F. Supp. 2d 11, 29 (D.D.C. 2012).

The fact that Congress chose language that differentiated between agencies and courts cannot be ignored.  Courts should "give effect, if possible, to every clause and word of a statute," *King v. Burwell*, 135 S. Ct. 2480, 2498 (2015) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883)), and thus must give effect to Congress's use of entirely different words in two entirely different sentences.  Indeed, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983) (alteration in original) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)).

Plaintiffs are therefore wrong to argue that this Court can rule against the Department solely because the Department did not apply the analysis of a court of equity.  It is irrelevant that the *agency* failed to find irreparable harm, because Congress expressly imposed that requirement only on courts, and expressly imposed a *different* standard on agencies.

## II.   Section 705's statutory context and legislative history confirms that Congress did not intend to require agencies to conduct the injunction test.

While the plain text is dispositive, the APA's statutory context and legislative history also reinforce Congress's intent to establish separate standards for agencies and courts under § 705. That context and history confirms that Congress did not intend to require an agency to conduct the injunction test every time it postpones agency action.[3]  When the APA was first enacted in 1946, it was established that agencies had broadly defined discretion to stay or delay their own

---

[3] Courts may consider a statute's wording "against the background of its legislative history and in the light of the general objectives Congress sought to achieve" to ascertain Congressional intent.  *Wirtz v. Glass Bottle Blowers Ass'n*, 389 U.S. 463, 468 (1968) (citing *National Woodwork Mfrs. Assn. v. NLRB*, 386 U.S. 612, 619 (1967)).

actions, whereas courts were required to consider factors like "irreparable harm" before intruding in agency matters by issuing a stay.

The U.S. Supreme Court, in an opinion issued two years before the APA was enacted, recognized an agency's "wide discretion as to the time and conditions of [its regulations'] issue and continued effect," including the "wide scope for the exercise of [the agency's] discretionary power to modify or suspend a regulation pending its administrative and judicial review." *Yakus v. United States*, 321 U.S. 414, 438, 39 (1944).[4]

Courts, on the other hand, traditionally had more constrained authority over agency action, including the requirement to make a finding of irreparable injury before staying agency action. By the time the APA was enacted, it was "a well established principle of law that . . . a court of the United States will not . . . enjoin the administrative process unless the circumstances alleged demonstrate that irreparable harm and injury will occur." *Reinecke v. Loper*, 77 F. Supp. 333, 335 (D. Haw. 1948) (citing *Nat. Gas Pipeline Co. of Am. v. Slattery*, 302 U.S. 300, 305 (1937)); *see also Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 14 (1942) (noting that courts have "the power to issue a stay [of agency action] in a situation where the function of the stay is to avoid irreparable injury").[5] As the U.S. Supreme Court advised, courts should not ignore the

---

[4] *Yakus* addressed the authority of the Office of Price Administration under the Emergency Price Control Act of 1942, which "can be viewed" as an exercise of Congress's constitutional war powers. *See Adamo Wrecking Co. v. United States*, 434 U.S. 275, 290 (1978) (Powell, J., concurring); *id.* at 278–79 (distinguishing *Yakus* on grounds unrelated to an agency's authority to issue stays of its own actions).

[5] The four-factor preliminary injunction test itself has roots in courts of equity. It is a judicially created doctrine intended for courts, by courts. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006) ("Ordinarily, a federal court considering whether to award permanent injunctive relief to a prevailing plaintiff applies the four-factor test historically employed by courts of equity."); *Bannercraft Clothing Co. v. Renegotiation Bd.*, 466 F.2d 345, 353 (D.C. Cir. 1972) ("Historically, courts sitting in equity have had broad powers to do justice and avoid irreparable injury . . . ."), *reversed on other grounds*, *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974).

"vital differentiations" between the historic roles and functions of courts and agency bodies, or else they may "stray outside their province and read the laws of Congress through the distorting lenses of inapplicable legal doctrine." *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 144 (1940).[6]

The contemporaneous history of the APA confirms that Congress intended to maintain, not eliminate, this "existing law" regarding the traditionally separate authorities of agencies and courts to stay agency action pending judicial review. Appendix to Attorney General's Statement Regarding Revised Committee Print of October 5, 1945, *reprinted in* Administrative Procedure Act, S. Comm. on the Judiciary, 79th Cong. 223, 230 (1944–46) (attached as Exhibit 8). In analyzing the two sentences of Section 10(d) of the APA (§ 705's predecessor[7]) enacted in 1946, the Attorney General recognized that the requirement to make a finding of irreparable injury applied specifically to courts:

> The first sentence ["When an agency finds that justice so requires, it may postpone the effective date of action taken by it . . ." in the current § 705] states existing law. The second sentence ["On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings" in the current § 705] may be said to change existing law only to the extent that [it codifies aspects of the opinion in *Scripps-Howard Radio* that are not pertinent here]. In any event, ***the court* must find, of course, that granting of interim relief is necessary to prevent irreparable injury**.

*Id.* at 230 (emphasis added) (attached as Exhibit 8).

---

[6] Even the plaintiffs in *Sierra Club v. Jackson* recognized that "Section 705 recognizes separate agency and judicial powers to stay rules, governed by different standards and arising from different sources." Plfs.' Reply Mem. in Supp. Mot. Summ. J. and in Opp'n Cross Mot. Summ. J. at 12–13, No. 1:11-cv-1278-PLF (D.D.C. filed Sept. 1, 2011) (citing *Bannercraft*; 466 F.2d at 353; *Scripps-Howard*, 316 U.S. at 9). The plaintiffs failed to reconcile this observation with their argument that agencies and courts should be held to the same four-factor preliminary injunction test standard under § 705.

[7] Differences between the two versions are stylistic only. *See Sierra Club*, 833 F. Supp. 2d at 21, n.4 (citations omitted).

The Attorney General's Manual on the Administrative Procedure Act ("Attorney General's Manual") later reiterated and expanded upon this point that both sentences of § 705 were intended to codify then-existing law, under which agencies and courts had separate powers governed by different standards to stay agency action. Commentary in the Attorney General's Manual[8] explained:

> The first sentence . . . is a restatement of existing law. The second sentence . . . confers upon every "reviewing court" discretionary authority to stay agency action pending judicial review "to the extent necessary to prevent irreparable injury." . . . The stay power conferred **upon reviewing courts** is to be exercised only "to the extent necessary to prevent irreparable injury." In other words, **irreparable injury, the historic condition of equity jurisdiction,** is the indispensable condition to the exercise of the power conferred by section 10(d) **upon reviewing courts**.
>
> . . . **As in the past**, **reviewing courts** may "balance the equities" in determining whether to postpone the effective date of agency action. Thus, "In determining whether agency action should be postponed, **the court** should take into account that persons other than parties may be adversely affected by such postponement[.]" . . . More broadly, it is clear that **a reviewing court** in exercising this power may do so under such conditions as the equities of the situation may require.

Attorney General's Manual on the Administrative Procedure Act at 105–06 (1973), *unabridged republication of 1st ed. (1947)* (attached as Exhibit 9).

The Attorney General's Manual plainly states that § 705 was intended to codify the traditional duty of *courts* to consider "irreparable injury," and to exercise their discretion to "balance the equities," prior to judicially staying agency action. These factors relate only to the powers conferred *on courts* by § 705, and do not indicate that the same factors apply to agency

---

[8] The Attorney General's Manual is "the Government's own most authoritative interpretation of the APA," to which Courts have "repeatedly given great weight." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 218 (1988). The manual was "prepared by the same Office of the Assistant Solicitor General that had advised Congress in the latter stages of enacting the APA, and was originally issued 'as a guide to the agencies in adjusting their procedures to the requirements of the Act.'" *Id.* (quoting Attorney General's Manual at 6).

discretion under § 705.   Indeed, the Manual tracks the statutory language and clearly differentiates between the two.

In *Sierra Club v. Jackson*, the case upon which Plaintiffs' arguments rests, the court relied on a limited committee report passage to conclude that "the standard for the issuance of a stay pending judicial review is the same whether a request is made to an agency or to a court." 833 F. Supp. 2d at 31.   The cited passage is at best ambiguous:

> [APA Section 10(d)] permits *either agencies or courts*, if the proper showing be made, to maintain the status quo . . . The authority granted is equitable and should be used by *both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy*.

*Id.* (citing Administrative Procedure Act, Pub. L. 1944–46, S. Doc. 248 at 277 (1946) [an excerpt from H.R. Rep. 79-1980 (1946)].

Committee reports, like this one, should not be relied on if they are "imprecise," as is this purported summary of the legislation's text.   *Dir., Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 278–280 (1994).   Even more importantly, a committee report's characterization of the actual words of the statute "cannot lead the court to contradict the legislation itself."   *Vasquez v. Grunley Constr. Co.*, 200 F. Supp. 3d 93, 101 (D.D.C. 2016) (quoting *Recording Indus. Ass'n of Am.v. Verizon Internet Servs.*, 351 F.3d 1229, 1237 (D.C. Cir. 2003)).   Section 705 plainly states that agencies may stay agency action when "justice so requires," while courts may do so only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705.   The committee report's inaccurate summary of the legislation ignores the "justice so requires" language in § 705's first sentence, and improperly adds "agencies" to the second sentence, concerning courts, without explanation.   By following this summary, the *Sierra Club v. Jackson* holding is at odds with the plain text of the APA and the overwhelming contemporaneous legislative record.

The *Sierra Club v. Jackson* court erred in contradicting § 705's plain legislative mandate based only on imprecise legislative history.[9]   This Court should uphold the Department's interpretation and application of § 705 as establishing distinct standards for agencies and courts.

### III.   Agency and judicial precedent demonstrate that § 705 does not require agencies to conduct the injunction test.

Plaintiffs' exclusive reliance on *Sierra Club v. Jackson* ignores the large body of agency and judicial precedent demonstrating that § 705 does not require agencies to perform the injunction test.   Agencies have issued, and courts have upheld, numerous stays under the "justice so requires" standard of § 705 without referring to the injunction test factors.   The wide range of circumstances under which agencies have exercised their § 705 authority belies the contention that agencies always must consider the four injunction test factors.[10]   The Trade Association Coalition is aware of no other court decision besides *Sierra Club v. Jackson* holding that agencies must satisfy the injunction test before issuing a stay under § 705.

Agencies have issued § 705 stays on numerous occasions, without referring to the injunction test factors.   *See, e.g.*, 76 Fed. Reg. 59,896, 59,897 (Sept. 28, 2011) (postponing effective date of wage rule in light of two pending challenges and the possibility that the litigation would be transferred to another court); 73 Fed. Reg. 67,107, 67,108 (Nov. 13, 2008)

---

[9] To the extent Plaintiffs argue that *Sierra Club v. Jackson* should be followed because it has already resolved the meaning of "justice so requires," *see* Complaint for Declaratory and Injunctive Relief at ¶ 101 (July 6, 2017), the Coalition disagrees.   *Sierra Club v. Jackson* held that EPA had failed to persuasively explain why it should be "treated differently from a court when staying agency actions pending judicial review." 833 F. Supp. 2d at 30–31.   However, the coalition respectfully urges another look at § 705's language, context and legislative history, which support treating administrative agencies that postpone their own actions differently from courts enjoining agency actions.

[10] The fact that some agencies have referenced the standards for injunctive relief should be unsurprising.   If a plaintiff can satisfy that very difficult burden, it is hard to imagine that the same plaintiff could not fit within the more flexible "justice so requires" standard of § 705.   But this only suggests that the four-factor test is *sufficient*, not *necessary*.

(finding that "it is in the interest of justice to postpone the effective date" of a power plant dust control measure pending judicial review where agency "has taken the position in the litigation . . . that it would be appropriate for the Court to remand and vacate the dust control measure"); 67 Fed. Reg. 47,296, 47,296 (July 18, 2002) (staying effectiveness of certain provisions of mine safety rule "to prevent confusion while [the agency] carries out [an] enforcement policy" developed as a result of settlement negotiations and where a stay "may further a full settlement of the court challenge"); 60 Fed. Reg. 54,949, 54,952 (Oct. 27, 1995) (finding that stay of reporting requirements "is appropriate and in the interest of justice, given the fact that EPA incorrectly categorized the effects observed in certain data . . . prior to promulgation of the final rule"); 60 Fed. Reg. 26,828, 26,828 (May 19, 1995) (finding that "it would be inequitable not to postpone the effective date" of air emission standards "in light of the possibility of increased compliance flexibility" where agency "has become aware that certain provisions of the final standards may require clarification" and plans to publish a subsequent document "to clarify such provisions"); 59 Fed. Reg. 43,048, 43,050 (Aug. 22, 1994) (finding that stay of reporting requirements "is appropriate and in the interests of justice, given the allegations of procedural and substantive deficiencies surrounding the Agency's listing of these two chemicals, and the resulting controversy and confusion in the regulated community").

Likewise, courts have upheld agency-issued § 705 stays under the "justice so requires" standard in a wide range of circumstances, without regard to whether the agencies performed the four-factor test. For example, in *Recording Industry Association of America v. Copyright Royalty Tribunal*, the D.C. Circuit concluded that an agency's "concern to minimize disruptive impacts" on industry was a sufficient rationale for its delay determination under § 705. 662 F.2d 1, 14 (D.C. Cir. 1981) (internal quotation marks omitted). Similarly, in *Southern Shrimp*

*Alliance v. United States*, the court upheld an agency's postponement of the effective date of the distribution of certain funds "pending the judicial challenges to the constitutionality of the [relevant statutory] requirement." 33 C.I.T. 560, 571–72 (2009). Neither opinion mentioned the four-factor preliminary injunction test.[11]

Notably, although an agency's authority to stay its own actions under § 705 is flexible, it is not unbounded. To the extent an agency stay issued under § 705 is a final agency action subject to judicial review,[12] it may be reviewed under the "arbitrary and capricious" standard of the APA. *See* 5 U.S.C. § 706(2)(A); *see also Recording Indus. Ass'n of Am.*, 662 F.2d at 14 (a court "must uphold" an agency's determination under § 705 "if the agency's path may reasonably be discerned") (quoting *Bowman Transp. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974)).; *S. Shrimp Alliance*, 33 C.I.T. at 572 (an agency may delay action under § 705 "based on a reasoned explanation"); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 42–43 (1983) ("[A] reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute."). Accordingly, if this Court reviews the Department's § 705 determination in the Delay Rule, it should do so under the appropriate "arbitrary and capricious" standard, which requires that the agency's determination be reasonable and reasonably explained, but does not require that the agency make specific findings under the

---

[11] The two D.C. Circuit cases cited by the *Sierra Club v. Jackson* court, *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) and *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958), are inapposite. *Cuomo* and *Virginia Petroleum* relate to whether courts, not agencies, must use the four-factor preliminary injunction test to stay agency action. *Cuomo*, 772 F.2d at 974; *Virginia Petroleum*, 259 F.2d at 923. Neither opinion cites § 705.

[12] The Trade Association Coalition does not concede that the Delay Rule is a final agency action subject to judicial review. *See Clean Air Council v. Pruitt*, 862 F.3d 1, 15 (D.C. Cir. 2017) (Brown, J., dissenting) ("[H]itting the pause button is the antithesis of ending the matter."). A stay "is 'essentially' nothing but a stay, and it does not qualify as 'final agency action.'" *Id.*

four-factor preliminary injunction test.  Although there may be some instances in which it is appropriate for agencies to choose to incorporate the injunction test factors into their analyses of "justice so requires," agencies are not *required* to do so every time.

## IV.    Different standards for agencies and courts under § 705 make practical sense.

Requiring agencies to make the injunction test findings under § 705 also makes little practical sense.  It is undisputed that the injunction test was designed for courts, not agencies, and courts "must not impose judicial roles upon administrators when they perform functions very different from those of judges." *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1168 (D.C. Cir. 1979).  Nor should courts constrain agency discretion by "engrafting their own notions of proper procedures upon agencies." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 525 (1978).  To do so would deny agencies the flexibility and discretion required to regulate efficiently and fairly.

For instance, Plaintiffs ask this Court to hold, based on *Sierra Club v. Jackson*, that every agency, in order to postpone an action under § 705, must determine the "likelihood of success on the merits" of a pending judicial review of the agency's action.  Such a request is not only impractical, but also borders on the absurd.  Rarely would an agency be willing to openly make the determination that it is likely to lose in pending litigation over its rule.  To do so would compromise the agency's litigation position.  Further, an agency could have many valid reasons to stay a challenged rule, even where the agency does not conclude that challengers are likely to ultimately succeed on the merits.  *See, e.g.*, 61 Fed. Reg. 28,508, 28,509 (June 5, 1996) (the agency "is not concurring" that parties have established likelihood of success on the merits, but "[r]ather, as a prudential matter . . . believes that a four month delay [of certain emission standards] is appropriate for [other] reasons").  For example, an agency may want to "allow facilities to avoid compliance expenditures . . . which may prove unnecessary." *See id.* at

28,508.  Or an agency may want to avoid or reduce the risk of unintended consequences, such as health and safety impacts, alleged to arise from a challenged rule.  *See, e.g.*, 60 Fed. Reg. 50,426, 50,428 (Sept. 29, 1995) (staying portions of waste management rule alleged to "make it more dangerous to manage the waste" by increasing risk of explosion and fire).

Plaintiffs' claims likewise would require that every agency stay issued under § 705 be accompanied by a finding of "irreparable injury."  Again, this requirement, while sensible for courts, makes little sense for agencies.  To stay agency action, a court must insert itself into the administrative process, presumably over an agency's objection.  Such intrusion into executive branch prerogatives should be limited to compelling circumstances, such as preventing irreparable injury.  *See Reinecke*, 77 F. Supp. at 335 ("[W]here matters peculiarly within the purview of an administrative body are before it for disposition, a court of the United States will not . . . enjoin the administrative process *unless the circumstances alleged demonstrate that irreparable harm and injury will occur*.") (emphasis added).  There is no similar reason to require an *agency* to make a finding of irreparable injury to stay its own action, over which it "normally retains considerable discretion."  *See Recording Indus. Ass'n of Am.*, 662 F.2d at 14 (collecting cases).  It is enough that an agency desires to "minimize disruptive impacts" or has other compelling reasons for finding that a stay is in the interests of justice.  *See id.* (quoting regulation at issue).  For instance, an agency may seek to "relieve[] a burden on the regulated community" of having to comply with challenged regulatory requirements that the agency "now considers to be more stringent than may be necessary."  *See* 60 Fed. Reg. 22,228, 22,228 (May 4, 1995) (staying certain water quality criteria).  Or an agency may seek to avoid imposing what "appear[] to be legitimately infeasible" requirements on regulated parties by a compliance date.

*See* 56 Fed. Reg. 27,332, 27,334 (June 13, 1991) (staying hazardous waste listings in order to "conditionally extend the effective date" of certain waste management standards).

This Court has no obligation to, and should not, apply *Sierra Club v. Jackson*'s unworkable holding here. "[F]ederal district judges . . . lack authority to render precedential decisions binding other judges, even members of the same court." *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011). "District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the law of the district." *In re Exec. Office of President*, 215 F.3d 20, 24 (D.C. Cir. 2000) (citing *City Stores Co. v. Lerner Shops*, 410 F.2d 1010, 1014 (D.C. Cir. 1969)). "Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions." *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) (internal quotation marks omitted) (quoting *State Farm Mutual Automobile Insurance v. Bates*, 542 F. Supp. 807, 816 (N.D. Ga. 1982)).

## CONCLUSION

For all of the foregoing reasons, this Court should hold that 5 U.S.C. § 705 does not require an agency to conduct the four-factor preliminary injunction test before postponing its own action. If this Court reviews the Department's § 705 determination in the Delay Rule, it should determine whether the Department acted arbitrarily, capriciously or otherwise contrary to law in concluding that "justice so requires" a delay of the November 1, 2016 final rule.


December 8, 2017                                   Respectfully submitted,

                                                    /s/ Megan H. Berge_____
                                                   Megan H. Berge (D.C. Bar No. 983714)
                                                   Baker Botts L.L.P.

15

1299 Pennsylvania Ave NW
Washington, DC 20004
(202) 639-7700
megan.berge@bakerbotts.com

Samara L. Kline (*pro hac vice* pending)
Baker Botts L.L.P.
2001 Ross Avenue
Suite 600
Dallas, TX 75201
(214) 953-6825
samara.kline@bakerbotts.com

*Counsel for* Amici Curiae
*Chamber of Commerce of the United States of America, American Fuel & Petrochemical Manufacturers, American Petroleum Institute, National Association of Home Builders, and National Mining Association*

16